**Robert C. COLEMAN, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 49S00–9302–CR–253.

Supreme Court of Indiana.

April 24, 1998.

---

Howard Howe, Indianapolis, for defendant-appellant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for plaintiff-appellee.

SELBY, Justice.

Appellant Robert C. Coleman executed a waiver of his right to trial by jury. He was tried before the court and found guilty of Murder, IND.CODE § 35–42–1–1 (Supp.1991), and Carrying a Handgun Without a License, a Class D Felony, IND.CODE § 35–47–2–1 and 23(c) (1988). The trial court sentenced Coleman to sixty years for Murder and one and

one-half years for Carrying a Handgun Without a License, sentences to run concurrently.

This appeal was originally docketed in this Court in 1993. Coleman then sought a remand to the trial court to pursue a petition for post-conviction relief. We granted this request and terminated the appeal pursuant to *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977). *See also Hatton v. State,* 626 N.E.2d 442 (Ind.1993). After a hearing, the trial court denied Coleman's petition for post-conviction relief. Coleman then initiated this appeal. By order, we granted Coleman leave to present both the issues that would have been addressed in the original appeal and those arising from the post-conviction proceeding.

Appellant raises the following issues: 1) Was Appellant denied his Sixth Amendment right to effective assistance of counsel? 2) Did the trial court commit reversible error when excluding evidence of specific instances of the victim's violent conduct and was counsel ineffective for failing to make an offer of proof of those specific instances? 3) Did the judge pro tempore lack authority to accept Appellant's jury trial waiver and was that waiver invalid? 4) Was the evidence insufficient to support the conviction of Murder? and 5) Is the sentence manifestly unreasonable? We answer these questions negatively, and affirm.

FACTS

The evidence viewed in the light most favorable to the judgment shows that Appellant shot and killed his long-time friend, William House, in the early morning hours of August 22, 1991.

At approximately 3:00 a.m., House drove to the home of his cousin, Diaryl Hoskins, and asked Hoskins to ride around with him in a white Camaro that House had borrowed. The two men drove to a local night club. As they approached, Hoskins noticed that Appellant was standing outside. Knowing that House and Appellant were good friends, Hoskins pointed out Appellant to House. House pulled the car over, and got out to speak to Appellant. Appellant and House argued; then House got back into the car, and he and Hoskins left the area.

A few minutes later, House noticed that Appellant was following him in his car. House pulled over and got out of the car. Appellant pulled up next to the Camaro, got out of his car, and the two rehashed their earlier argument. Hoskins told House that he wanted to get going, and House got back into the Camaro. Appellant then approached the Camaro, pulled out a handgun and fired two shots in House's direction. The first shot ricocheted off the ground and hit the car door, the second shot hit House in the side of the chest, below his left armpit. House put the car in gear and accelerated, then apparently lost consciousness. Hoskins managed to stop the car. With the help of some bystanders, Hoskins moved House into the passenger seat and drove to Methodist Hospital, where doctors pronounced House dead on arrival.

Appellant took the stand in his own defense and testified that he shot the gun in House's direction to cover himself while he retreated behind his car. He stated that he believed House had a gun, and he shot only after he saw House make a move for the gun.

DISCUSSION

I. Effective Assistance of Counsel

We evaluate claims concerning denial of the Sixth Amendment right to effective assistance of counsel using the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Yerden v. State,* 682 N.E.2d 1283, 1286 (Ind.1997). First, the appellant must show that his attorney's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–67. Second, the appellant must show that the deficiencies in the attorney's performance were prejudicial to the defense. *Id.* at 691–96, 104 S.Ct. at 2066–69. Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). We presume that the attorney's performance has met the objective standard of reasonableness; to prevail, the appellant must rebut this presumption with strong and convincing

evidence. *Barany v. State*, 658 N.E.2d 60, 65 (Ind.1995). Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

■ Appellant sought permission to terminate his direct appeal to pursue post-conviction remedies for the alleged violation of his Sixth Amendment rights, and to develop a record for review of those claims. The post-conviction court expressly limited its decision to Appellant's ineffectiveness claims. On appeal from denial of post-conviction relief, the appellant must show that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995). It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.* at 1119–20.

### A. Alleged Conflict of Interest

■ Appellant first claims that his trial attorney was ineffective because he represented Appellant under a conflict of interest. The Sixth Amendment guarantees that the accused be represented not only by counsel satisfying at least a minimum standard of professional competency but also by counsel whose undivided loyalties lie with his client. *Holloway v. Arkansas*, 435 U.S. 475, 481–82, 98 S.Ct. 1173, 1177–78, 55 L.Ed.2d 426 (1978); *Williams v. State*, 525 N.E.2d 1238, 1240 (Ind.1988). To establish a conflict of interest amounting to a Sixth Amendment violation, Appellant must show that counsel actively represented conflicting interests that adversely affected his performance. The mere possibility of a conflict of interest is insufficient to justify reversal of a conviction. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100

S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Williams*, 525 N.E.2d at 1240.

■ Appellant's attorney, Timothy Bookwalter, was a candidate for the office of Indiana Attorney General at the time of Appellant's trial. Appellant claims that Bookwalter put his interest in winning the election above Appellant's interest in a zealous defense. According to Appellant, his attorney's divided loyalty harmed him in the following respects: (1) counsel recommended that Appellant waive his right to a jury trial so that the trial would proceed faster and with less publicity; (2) counsel put campaign obligations above trial preparation; and (3) counsel, who was effectively running for the position of State prosecutor, did not zealously defend Appellant so as not to appear soft on crime.

In the post-conviction proceedings, attorney Bookwalter testified that Appellant's trial was in mid-September and he did not begin campaigning full-time until October; that during September, he campaigned only on evenings and weekends; and that the campaign had no impact on his representation of Appellant at the trial. He further testified that he recommended that Appellant waive his right to a jury trial because, based on his experience and the particular facts of this case, he thought Appellant had a better chance being tried by the judge than by a panel of twelve ordinary citizens. Finally, he stated that he was proud of being a defense attorney and did not believe that representing Appellant was a liability to his campaign.

The post-conviction court found that counsel did not neglect Appellant's case in favor of his campaign, and that counsel had adequate strategic reasons for recommending a jury waiver and for conducting the trial as he did. The evidence does not lead unerringly and unmistakably to the opposite conclusion; thus, we will not disturb the post-conviction court's decision on appeal.[1]

---

1. Appellant also suggests that the trial court erred by not inquiring on the record as to whether he effectively waived his right to conflict-free representation, *citing Cuyler v. Sullivan*, 446 U.S. at 347, 100 S.Ct. at 1717–18. *Cuyler* requires a trial court to initiate an inquiry when the trial court knows or reasonably should know that a

particular conflict of interest exists. *See id.* at 346–47, 100 S.Ct. at 1716–18. Appellant urges us to find that the trial court knew or should have known Bookwalter's candidacy would create a conflict of interest. *Cuyler*, however, does not compel that conclusion, and we decline to indulge in the presumption that a defense attor-

### B. Alleged Failure to Investigate and Prepare for Trial

Appellant argues his trial attorney failed to investigate the case and consult with Appellant before and during trial; failed to take any depositions or interview witnesses; failed to develop and argue possible defenses; and failed to prepare for final argument.

■ As stated above, we will not find counsel's assistance ineffective absent a showing that due to counsel's alleged errors, the result of the proceeding has been rendered unfair or unreliable. Allegations that counsel failed adequately to consult with the appellant or failed to investigate issues and interview witnesses do not amount to ineffective assistance absent a showing of what additional information may have been garnered from further consultation or investigation and how that additional information would have aided in the preparation of the case. *Brown v. State*, 691 N.E.2d 438, 446–47 (Ind.1998).

■ Appellant apparently asserts that if his attorney consulted with him more frequently, reviewed the evidence with him and interviewed witnesses, he would have developed additional evidence to support his self-defense claim,[2] or to support the claim that his conduct amounted to a lesser included offense of murder such as reckless homicide[3] or voluntary manslaughter,[4] rather than intentional murder. At the post-conviction hearing, Appellant called two witnesses who were not heard at trial. We construe Appellant's argument to be that if counsel called these witnesses at trial, their testimony would have supported his claim that he was not guilty of intentional murder, but acted in self-defense, or was guilty only of a lesser included offense of murder.

Appellant's friend, Kenneth Ellis, testified at the post-conviction hearing that House had a reputation for violence in the community, and recounted a specific instance in which Appellant and House fought over money when they were teenagers. Appellant's wife, Anita Coleman, testified that House was known for carrying a gun, and that she had seen House with a gun on several occasions. Appellant points to no other specific evidence that would have been developed upon further consultation and investigation.

Attorney Bookwalter interviewed Ellis and Coleman before trial, but called neither of them to testify. Absent a strong showing to the contrary, we presume that counsel's decision not to call a witness was indicated by the circumstances of the case and made upon due deliberation. *See Williams v. State*, 508 N.E.2d 1264, 1267 (Ind.1987). In light of the

---

ney who is a candidate for the office of Attorney General is unable to represent a defendant in court to the best of his ability and with the defendant's best interests in mind. To the contrary, a candidate for that office would not advance his interests by demonstrating that he is a weak or unskilled attorney on behalf of his client. *See U.S. v. Horton*, 845 F.2d 1414, 1420 (7th Cir.1988).

2. The defense of self-defense is provided by statute: "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary." Ind.Code § 35–41–3–2(a) (1988).

3. "A person who recklessly kills another human being commits reckless homicide, a Class C felo-

ny." Ind.Code § 35–42–1–5 (1988). "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c) (1988).

4. "(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, it is a Class A felony if it is committed by means of a deadly weapon. (b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter." Ind.Code 35–42–1–3 (1988). "Sudden heat" has been defined as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man, which prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *Baird v. State*, 604 N.E.2d 1170, 1178 (Ind.1992). Mere words are not sufficient provocation to precipitate sudden heat. *Id.*

other evidence admitted at trial that supported Appellant's defenses, we find that Appellant has not overcome this presumption. For example, Appellant introduced evidence that House had a violent character, including testimony from Mary Coleman and Appellant that House's reputation was a violent one. Appellant also testified that House typically carried a gun, that he previously saw House pull a gun on someone, and that Appellant was cautious and afraid of House. Appellant testified that he discharged his gun only after he saw House make a move for a gun and he did not fire *at* House but only in his direction. Hoskins testified that House had been convicted of a violent crime and that, after the first argument outside the nightclub, House was angry and upset.

Since the trier of fact was presented with evidence that would arguably support Appellant's defenses, we do not find that Appellant's conviction was somehow unfair or unreliable due to counsel's strategic decision not to call Coleman or Ellis. *Cf. Williams*, 508 N.E.2d at 1267–69 (counsel's complete lack of trial preparation and failure to present any evidence to support alibi defense merited reversal for new trial).

■ Appellant also argues that counsel was ineffective because he did not prepare for closing argument, and particularly because counsel suggested during closing argument that, on the evidence, "it's hard to argue self-defense." (R. 373.) We find no ground for reversal here. The crafting and delivery of final argument are matters of strategy on which counsel is entitled to the presumption of competency. Isolated poor strategy does not necessarily amount to ineffective assistance. *See Mato v. State*, 478 N.E.2d 57, 60 (Ind.1985) (strategic decision to mention defendant's motorcycle gang membership in closing argument not ineffective assistance).

Despite the comment regarding self-defense, counsel marshaled evidence and argued vigorously in support of the theory that Appellant's conduct was not intentional or knowing, but that Appellant acted in "sudden heat" or recklessly. Counsel's choice to fo-

cus on Appellant's lack of intent rather than the self-defense claim falls within the realm of strategy, and did not render the result of the proceedings unfair or unreliable.

### C. Alleged Failure to Impeach Prosecution's Lead Witness

Appellant next claims counsel's performance was deficient because he failed to impeach the State's lead witness, Diaryl Hoskins, with inconsistent statements made in a statement Hoskins gave to police.[5] Appellant claims (1) the inconsistencies would have cast doubt on Hoskins' credibility, and (2) failure to exploit them prejudiced him because Hoskins was the State's main witness and the only eye witness to the shooting.

■ The specific inconsistencies Appellant refers to are that, in the statement, Hoskins said that when House came to get him, he shouted at his window, and at trial, Hoskins testified that House came inside to get him. Also, Hoskins told the police that while House and Appellant were talking outside the nightclub, he yelled that he was going to move the car. At trial, he did not mention moving the car. Finally, Hoskins told police Appellant had his hand in his pocket before the shooting. At trial he testified that Appellant reached in his pocket and pulled the pistol out.

To show ineffective assistance here, Appellant must show that counsel's failure to use the pretrial statement to impeach Hoskins rendered the result of the trial unfair or unreliable. *See Johnson v. Indiana*, 675 N.E.2d 678, 686 (Ind.1996). The record shows that on cross examination, trial counsel challenged Hoskins' ability accurately to observe and recall the events preceding the shooting, and elicited testimony regarding House's violent criminal history, and testimony that House was angry and upset after the first altercation. Considering the test to which Hoskins was put, we are unpersuaded that trial counsel's failure to impeach Hoskins with the prior inconsistent statement rendered Appellant's conviction fundamentally unfair or unreliable.

---

**5.** Hoskins' pretrial statement was made part of the record at the post-conviction proceedings.

### D. Alleged Failure to Advise Appellant on Jury Trial Waiver

Appellant next contends that his attorney was ineffective for failing to advise him about the consequences of waiving his right to a jury trial.

 Appellant testified that his attorney told him that he did not have the funds for a jury trial, and that a jury trial would be bothersome and time-consuming. Appellant further testified that if his attorney had advised him that he was a candidate to be the chief prosecutor for the State and that the judge who would be hearing his case was a former prosecutor, he would never have agreed to the waiver.

Trial counsel testified in the post-conviction proceedings that his fee would have been the same for a bench or jury trial. He also testified that he advised Appellant to waive his jury trial because he thought Appellant had a better chance being tried by this judge than by a panel of twelve ordinary citizens. Appellant conceded that counsel gave him this advice. The post-conviction court found that this was an adequate strategic reason for recommending the waiver. The evidence does not compel the opposite conclusion; thus, we will not disturb the post-conviction court's finding.

### E. Sentencing

Appellant next contends that he was prejudiced by counsel's substandard performance at the sentencing hearing. We disagree.

 At the beginning of the sentencing hearing, counsel filed a motion to withdraw his appearance. The trial court consulted Appellant and offered to reschedule the sentencing hearing and appoint substitute counsel. Appellant declined, and agreed to have trial counsel continue to represent him. Appellant argues that after the motion was denied, counsel should have obtained a continuance to prepare for the hearing; instead, Appellant claims counsel gave a mere per-

functory performance, failing to call available witnesses to speak for him, failing to present evidence of statutory mitigators, and failing to argue that the evidence at trial supported a lesser included offense of murder. Appellant claims the trial court imposed the maximum sentence as a direct result of counsel's poor performance.

At the hearing, counsel presented both testimonial evidence from Guy Hall, Appellant's friend, and a written statement from Appellant's wife. Counsel pointed out the hardship a lengthy incarceration would have on Appellant's wife and three children, Appellant's apparent remorse at having killed his friend, and his lack of specific intent to kill. Appellant personally expressed his remorse, denied any intent to kill the victim, and asked for forgiveness. Appellant affirmed on the record that there was no further evidence to present on his behalf.

Other than his wife, who was heard at sentencing in the form of a written statement, Appellant points to no specific witness whom counsel should have called, and does not show how any additional testimony would have changed the sentencing outcome. Appellant has not met his burden of establishing ineffective assistance. *See Alvarado v. State,* 686 N.E.2d 819, 822–23 (Ind.1997).[6]

### II. Victim Character Evidence

Appellant argues that the trial court improperly excluded evidence of a specific instance of House's violent conduct offered in support of his self-defense claim, to prove that he had reason to fear House at the time of the shooting. He also contends counsel was ineffective for failing to make an offer of proof regarding the content of this testimony.

When Appellant was tried in 1992, evidence of a homicide victim's character was generally prohibited, unless a defendant raised a self-defense claim. *Holder v. State,* 571 N.E.2d 1250, 1253 (Ind.1991).[7] In *Hold-*

---

**6.** Appellant also argues that the cumulative effect of the alleged errors by counsel render his conviction fundamentally unfair or unreliable. Because we have found no prejudice resulting from any of the alleged errors, Appellant's claim that he was denied effective assistance on this ground

must fail. *Cf. Smith v. State,* 547 N.E.2d 817, 822 (Ind.1989) (compilation of errors rendering defense "so anemic" as to undermine confidence in guilty verdict warrants reversal).

**7.** Coleman was tried before the Indiana Rules of Evidence became effective January 1, 1994.

*er*, we summarized the applicable law as follows:

> Evidence of the victim's character may be admitted for either of two distinct purposes: to show that the victim had a violent character giving the defendant reason to fear him or to show that the victim was the initial aggressor. [*Phillips v. State*, 550 N.E.2d 1290 (Ind.1990).]

> Evidence of specific bad acts is admissible to prove that the victim had a violent character which frightened the defendant. *Id.* However, only general reputation evidence of the victim's violent character is admissible to prove that the victim was the initial aggressor. *Norris v. State*, [498 N.E.2d 1203, 1205 (Ind.1986).] If the defendant wishes to introduce either type of evidence, she must first introduce appreciable evidence of the victim's aggression to substantiate the self-defense claim. *Phillips*, 550 N.E.2d at 1297. When offering specific bad acts evidence to prove the victim's violent character frightened her, the defendant must also provide a foundation showing that she knew about the specific bad acts in question before she killed the defendant. *Id.*

571 N.E.2d at 1254.

Appellant attempted to elicit evidence from Mary Coleman that House had a reputation for carrying a gun, and that she saw him point a gun at a person on a prior occasion. The trial court allowed the general reputation evidence, but excluded the evidence of the specific act.

Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Ind.Trial Rule 61; *McClain v. State*, 675 N.E.2d 329, 331 (Ind.1996). In determining whether an evidentiary ruling affected an Appellant's substantial rights, we assess the probable impact of the evidence on the trier of fact. *Id.* In determining whether there has been a Sixth Amendment violation, we assess whether counsel's alleged deficient performance has rendered the result of the trial fundamentally unfair or unreliable. *Lockhart*, 506 U.S. at 372, 113 S.Ct. at 844.

At trial, Appellant was permitted to testify that House typically carried a gun, that he had seen House pull a gun on someone before, that House was dangerous and vengeful, and that Appellant was cautious and afraid of House. Hoskins testified that House had been convicted of a violent crime and that, after the first encounter with Appellant outside the nightclub, House was angry and upset.

Considering the other evidence that could support a finding that Appellant feared House, we find it unlikely that the exclusion of evidence of a single instance of prior violent conduct had an impact on the trial judge's ultimate ruling. And, in light of this evidence, we do not find that counsel's failure to make an offer of proof regarding the content of Mrs. Coleman's testimony rendered the result of the proceedings fundamentally unfair or unreliable. We find neither reversible error as a result of the exclusion of this testimony, nor ineffective assistance of counsel as a result of counsel's allegedly deficient efforts to introduce it.

### III. Jury Trial Waiver

As stated above, Appellant executed a waiver of his right to a trial by jury. He now claims that his conviction should be reversed because the judge pro tempore lacked authority to accept the waiver, or because the judge failed to make an independent determination that the waiver was knowing, intelligent and voluntary.

#### A. Authority of Judge Pro Tempore

The authority of an officer appointed as judge pro tempore does not affect the jurisdiction of the court, and thus, the failure of a party to make a contemporaneous objection to the appointee's authority waives the issue for appeal. *See Floyd v. State*, 650 N.E.2d 28, 32 (Ind.1994) (failure to object to judge pro tempore's authority to enter final, appealable order waives the issue). Appellant did not make a contemporaneous objection to the judge pro tempore's authority, and thus, waived the issue for appeal.

Even if Appellant had preserved the issue, his claim would fail. Appellant bases his claim of lack of authority on the ground

that the record of proceedings contained no evidence that the judge pro tempore had been duly appointed and authorized to act in the trial judge's absence. The State has since supplemented the record, which now contains a certified copy of the order and judgment of appointment. "When duly sworn, or without being duly sworn if he is a judge of a court of this state, the judge pro tempore shall have the same authority during the period of his appointment as the judge he replaces." Ind.Trial Rule 63(E); *see also, Floyd,* 650 N.E.2d at 30 n. 1 (T.R. 63(E) applicable in criminal cases). The Order and Judgment of Appointment shows that the judge pro tempore had been duly sworn, and thus, possessed the authority to accept Appellant's jury trial waiver.

### B. Validity of Waiver

Appellant also argues that his conviction should be reversed because the judge pro tempore failed fully to examine Appellant on the record as to his understanding and appreciation of the consequences of the waiver. We find no error.

The right to a trial by jury is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution, and may be waived by a knowing, intelligent and voluntary waiver. *Poore v. State,* 681 N.E.2d 204, 206 (Ind.1997); *Robey v. State,* 555 N.E.2d 145, 148 (Ind.1990). The defendant must express his personal desire to waive a jury trial and such personal desire must be apparent from the record. *Poore,* 681 N.E.2d at 206. Contrary to Appellant's assertion, however, there is no requirement that a trial court orally advise a defendant of his right to a jury trial and the consequences of waiving that right. *Hutchins v. State,* 493 N.E.2d 444, 445 (Ind.1986). A written waiver executed by the defendant is adequate. *Id.*

At the final pretrial hearing in this case, Appellant filed a written, signed waiver of jury trial. Before accepting the waiver, the judge pro tempore questioned Appellant about whether he understood that he had the right to have his guilt or innocence determined by a jury of twelve persons selected from the county voter registration rolls, and that by waiving that right, his guilt or innocence would be determined by a judge alone. The judge also asked Appellant whether he had an adequate opportunity to discuss the consequences of this waiver with his attorney, and Appellant responded that he had. This was more than sufficient to insure that Appellant's waiver was valid. *See Jones v. State,* 544 N.E.2d 492, 495 (Ind.1989).

### IV. Sufficiency of Evidence of Murder

Appellant contends that the record contains insufficient evidence to sustain his conviction for murder. When examining the sufficiency of evidence, we neither reweigh the evidence nor resolve questions of credibility; rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn from that evidence. *Deckard v. State,* 670 N.E.2d 1, 3 (Ind.1996). We affirm if, considering that evidence and those inferences, we find substantial evidence of probative value to support the judgment. *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995).

To obtain a conviction for murder, the State must prove beyond a reasonable doubt that the defendant knowingly or intentionally killed the victim. IND.CODE § 35–42–1–1(1) (Supp.1991); *Davis v. State,* 635 N.E.2d 1117, 1120 (Ind.Ct.App.1994). Appellant argues although the evidence shows he fired two shots in the victim's general direction, it is insufficient to establish beyond a reasonable doubt that he knowingly or intentionally killed House. Appellant testified at trial that he fired the shots under the belief that House had a gun, and that House was going to shoot him first. He stated that he discharged the gun to cover himself as he ran behind his car, not to injure or kill House. He argues this evidence might prove that he committed reckless homicide or voluntary manslaughter, but not murder.

State witness Diaryl Hoskins testified that after Appellant and House argued the second time, House got back into the white Camaro. Appellant then approached the car and said, "Yeah, motherf----r, but you ain't going to talk to me like that either," and

he reached in his pocket, pulled out the gun, and fired. (R. at 154.)

■ This testimony from the single eyewitness to the act is sufficient to sustain a murder conviction. *See, e.g., Hood v. State,* 561 N.E.2d 494, 496 (Ind.1990). Further, intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death. *Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996). Approaching the victim and firing two shots in his direction undoubtedly constitutes using a deadly weapon in a manner likely to cause death. The evidence was therefore sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that Appellant knowingly or intentionally killed William House.

## V. Sentence

At the time of Appellant's crime, murder carried a presumptive sentence of forty years, which could be enhanced by twenty years due to aggravating circumstances. IND.CODE § 35–50–2–3(a) (1988). The trial court found two aggravating circumstances, and imposed the maximum sentence of sixty years. Appellant argues this sentence is erroneous.

■ When a trial court enhances a presumptive sentence, it must state its reasons for doing so. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1997). The court must identify all significant aggravating and mitigating factors, state why each is considered aggravating or mitigating, and articulate the balancing process by which the court determined that the aggravating factors outweighed the mitigating factors. *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997). "These requirements serve the dual purpose of guarding against arbitrary sentences and providing an adequate basis for appellate review." *Id.* at 678. Imposition of sentence is within the sound discretion of the trial court, and we "will not revise a sentence authorized by statute except where such a sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B).

Appellant first argues that his sentence is erroneous because the trial court failed to consider certain mitigating factors and weigh them against aggravating factors. Specifically, he claims the trial court should have found that he was remorseful, and that long-term imprisonment was not in his or society's best interests and would result in undue hardship to his family. Appellant also claims that the trial court should have considered as a mitigating factor that he was provoked, and that the proof at trial was more consistent with reckless homicide or involuntary manslaughter than with murder.

■ A description of significant mitigating circumstances must be set forth on the record if the trial court reduces the presumptive sentence or uses mitigating circumstances to offset aggravating circumstances. *Widener v. State,* 659 N.E.2d 529, 533–34 (Ind.1995). Otherwise, while a trial court may not ignore facts in the record that would mitigate an offense, it need not credit mitigating factors in the same manner as would the appellant, nor explain why it found a particular circumstance insufficiently mitigating. *Crawley v. State,* 677 N.E.2d 520, 523 (Ind.1997). A finding of mitigating circumstances is within the trial court's discretion. *Widener,* 659 N.E.2d at 533.

■ The trial court apparently did not find any of the suggested factors to be sufficiently mitigating to offset the aggravating factors expressly found. The trial court was not required to state on the record why it found these factors to be insufficiently mitigating. *See Widener,* 659 N.E.2d at 533–34. We find no error regarding mitigating circumstances in this record.

Appellant next argues his sentence should be reversed because the trial judge failed adequately to explain its reasons for imposing the maximum term of years. Appellant complains that the sentencing statement merely recites statutory aggravating factors, and that mere recitation of statutory factors is insufficient to support an enhanced sentence. *See Erby v. State,* 511 N.E.2d 302, 303–04 (Ind.1987).

■ When sentencing Appellant, the trial court stated on the record:

I sentence Mr. Coleman to the Department of Corrections for classification and confinement for a period of sixty years on count one. I impose this sentence because Mr. Coleman's prior criminal history includes three felony convictions and two of those are for violent crimes, harmful to individuals; battery and conspiracy to commit robbery, and as a juvenile he was convicted of armed robbery. This to me indicates that he is [in] need of corrective treatment that can only be found in a prison setting.

(R. at 456–57.) This is more than a "mere recitation" of statutory factors. The trial judge specifically listed three prior crimes of which Appellant had been convicted. This alone would have been adequate to support the enhanced sentence. *See Isaacs v. State*, 673 N.E.2d 757, 765 (Ind.1996). And, while a generalized statement that a defendant is in need of correctional and rehabilitative treatment is not a sufficient reason to enhance a sentence, here the trial court specifically explained that Appellant's criminal history demonstrates the need for such treatment. *Cf., Erby*, 511 N.E.2d at 303–04 (sentencing statement that merely lists statutory aggravators without stating particular facts and circumstances is insufficient to support sentence enhancement). We find no error.

To summarize, Appellant's arguments do not show that his sentence is manifestly unreasonable. The trial court found two valid aggravating factors: (1) Appellant's criminal history, including three convictions for violent crimes; and (2) that Appellant is in need of correctional and rehabilitative treatment because of that criminal history. The trial court found no mitigating circumstances, and none are compelled in this record. The sentence imposed therefore represents a valid exercise of trial court discretion.

CONCLUSION

We affirm Appellant's conviction and sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.