**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 22 2012, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STANLEY F. WRUBLE, III**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS OGUTU, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1202-CR-98 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jerome Frese, Judge
Cause No. 71D03-1103-FD-169

**August 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After a jury trial, Dennis Ogutu was found guilty and convicted of neglect of a dependent as a Class A misdemeanor. Ogutu appeals, raising three issues for our review: 1) whether sufficient evidence supports his conviction for neglect of a dependent; 2) whether the trial court abused its discretion by declining to give Ogutu's proposed jury instruction on negligence and recklessness; and 3) whether the trial court abused its discretion by refusing to allow Ogutu to admit a map into evidence. Concluding the evidence is sufficient to support Ogutu's conviction, the trial court did not abuse its discretion by refusing Ogutu's proposed instruction, and the trial court's refusal to admit Ogutu's map into evidence did not result in an unfair trial or affect his substantial rights, we affirm.

## Facts and Procedural History

In March 2011, Ogutu was exercising parenting time with I.O., his almost-four-year old son. While I.O. was sleeping, Ogutu's friend, Twali Ngosi, called him to offer to pick up Ogutu so Ngosi could return a vehicle that he borrowed from Ogutu. Ogutu accepted Ngosi's offer. When Ngosi arrived, he asked Ogutu, "where's your son?" Transcript at 95. Ogutu replied I.O. was "fine" and "in the home." Id. Ngosi's home was approximately six to ten minutes from Ogutu's apartment, but on the way there they made an unexpected stop at a gas station because one of Ngosi's tires had low air pressure. After filling up the tire with air, Ngosi received a call on his cell phone from the South Bend Police Department. The caller asked for Ogutu and informed him I.O. had been found wandering outside his apartment building near the street, and Ogutu

2

returned to his apartment. Ogutu was subsequently charged with neglect of a dependent as a Class D felony.

At trial, Ogutu attempted to admit into evidence a map printed from the internet showing the route, distance, and travel time from Ogutu's apartment to Ngosi's residence. The State objected, arguing the map was irrelevant, duplicative of other evidence already presented, and unauthenticated, and the trial court agreed and refused to admit the map into evidence. Ogutu offered a proposed jury instruction stating:

> If the accused were merely negligent in relation to the allegations of the State, then he is not criminally liable, and your verdict must be not guilty.
>
> One must intend to do, or omit to do the act resulting in injury to another in order to be guilty of a criminal act. Now if you believe that the accused did not intentionally or knowingly commit the act and he was only negligent, then your verdict must be not guilty.
>
> Negligent conduct without more will not support a finding of an individual being guilty for a criminal act in Indiana.

Appellant's Appendix at 11. The trial court refused the instruction, and the jury found Ogutu guilty of neglect of a dependent. Although Indiana Code section 35-46-1-4(a) provides Ogutu's offense is a Class D felony, the trial court reduced Ogutu's conviction to a Class A misdemeanor and sentenced him to sixty days in prison.

Ogutu now appeals. Additional facts will be supplied as appropriate.

### Discussion and Decision

#### I. Sufficiency of the Evidence

##### A. Standard of Review

When assessing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Rodriguez v. State, 714 N.E.2d 667,

3

670 (Ind. Ct. App. 1999), trans. denied. We only consider the evidence most favorable to the verdict and all reasonable inferences to be drawn therefrom, and we will affirm a conviction if probative evidence exists from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010).

## B. Knowingly or Intentionally

Indiana Code section 35-46-1-4(a) provides, "A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally . . . places the dependent in a situation that endangers the dependent's life or health . . . commits neglect of a dependent[.]" Ogutu argues the evidence is insufficient to establish he "knowingly or intentionally" placed I.O. in a situation endangering his life or health. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so," and "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(a), (b). Our courts have more specifically defined "knowingly" for the purposes of our neglect of a dependent statute to require "the accused must have been subjectively aware of a high probability that he placed the dependent in a dangerous situation." Armour v. State, 479 N.E.2d 1294, 1297 (Ind. 1985).

Ogutu analogizes this case to Scruggs v. State, 883 N.E.2d 189 (Ind. Ct. App. 2008), trans. denied. There, the defendant left her seven-year-old son, M.H., at home while she ran an errand. When she returned approximately three hours later, he was missing. M.H. was later found safe at the defendant's boyfriend's uncle's home, but the

4

defendant was charged and subsequently convicted of neglect of a dependent. On appeal, this court concluded the evidence was insufficient to establish the defendant had a "subjective awareness of a 'high probability' that M.H. was placed in a dangerous situation when she left him home alone." Id. at 191. M.H. was seven years old, the defendant testified M.H. knew "not to mess with the stove or open the door or anything," id., and the State failed to present any evidence contradicting the defendant's evidence that suggested M.H. was responsible enough to be home alone. Because the only evidence presented suggested M.H. was responsible enough to be left at home, we concluded there was insufficient evidence that the defendant was subjectively aware of a high probability that M.H. was placed in a dangerous situation.

In Thames v. State, 653 N.E.2d 517 (Ind. Ct. App. 1995), on the other hand, we concluded sufficient evidence was presented to support the defendant's conviction of neglect of a dependent after the defendant left his girlfriend's five-year-old daughter alone and the child wandered out of her home and was eventually taken to the police department. Although the defendant was only a few houses away from the child, he was gone for several hours and the child was found wandering the street. We concluded the defendant "was experienced at watching children and thus should have been subjectively aware of a high probability that he placed [the child] in a dangerous situation by leaving her at home." Id. at 517.

Examining the evidence most favorable to the jury's verdict and the reasonable inferences to be drawn therefrom and without reweighing the evidence, we conclude sufficient evidence was presented to establish Ogutu was subjectively aware of a high probability he placed I.O. in a dangerous situation by leaving him alone in Ogutu's

5

apartment.  Ogutu was I.O.'s father and the evidence suggests he routinely exercised the parenting time afforded non-custodial parents.  I.O. was a few weeks away from turning four years old.  After a passerby notified the South Bend Police Department that a child was wandering near the street, a police officer arrived and stopped I.O. just as he had stepped from the sidewalk into the street in between two parked cars.  Based on I.O.'s age, Ogutu's experience in watching I.O., and the fact that I.O. did in fact wander outside Ogutu's apartment and was apprehended as he began walking in the street, a reasonable jury could conclude beyond a reasonable doubt the evidence supports a conclusion Ogutu was subjectively aware of a high probability he placed I.O. in a dangerous situation by leaving him home alone.

## II.  Ogutu's Proposed Instruction

### A.  Standard of Review

> The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion.  A trial court erroneously refuses to give a tendered instruction, or part of a tendered instruction, if: (1) the instruction correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the tendered instruction is not covered by the other instructions given.

Overstreet v. State, 783 N.E.2d 1140, 1163-64 (Ind. 2003) (citations omitted), cert. denied, 540 U.S. 1150 (2004).  We review jury instructions as a whole and in reference to each other.  Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006).

6

## B. The Instruction

The trial court read to the jury[1] its instruction regarding Indiana Code section 35-46-1-4 and the required elements for a conviction of neglect of a dependent:

> The statutes defining the offense charged herein provides [sic], in pertinent part, as follows:
> A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly places the dependent in a situation that endangers the dependent's health commits Neglect of a Dependent, a Class D felony. . . . A person engages in conduct knowingly if when he engages in the conduct he is aware of a high probability that he is doing so.

Tr. at 184-85. Ogutu contends the trial court's instruction which only gave "the standardized definition of the term [knowingly] without the context of negligence or recklessness failed to adequately apprise the jury of its meaning and thereby lessoned [sic] the State's burden on the Statute's [sic] mens rea requirement." Appellant's Brief at 13.

We disagree that the trial court's instruction lessened the State's burden of establishing Ogutu knowingly or intentionally placed I.O. in a position of harm. Rather, the trial court's instruction recites almost verbatim what is required by Indiana Code sections 35-46-1-4(a) and 35-41-2-2(b).[2] Ogutu's proposed instruction attempted to further articulate the mens rea required by Indiana Code, but the substance of the trial court's jury instruction already defined the required mens rea. Moreover, in order for the

---

[1] Ogutu included his proposed instruction in his Appellant's Appendix, but he did not include any instructions actually used by the trial court. We therefore refer to the trial court transcript to determine what was included in the trial court's instruction concerning the statutory elements of the crime of neglect of a dependent as a Class D felony.

[2] Based on what the trial court read to the jury, the instruction included Indiana Code section 35-46-1-4's requirement that Ogutu "knowingly" placed I.O. in a position of harm, but it does not mention "intentionally," nor does it define that term. This distinction is irrelevant, however, because the State's argument was that Ogutu knowingly placed I.O. in a position of harm, and the absence of the word "intentionally" would not have prejudiced Ogutu in any way.

7

trial court to give a tendered instruction, the instruction must be a correct statement of the law. The first sentence of the second paragraph of Ogutu's tendered instruction is not correct, so this alone would warrant its rejection. We therefore conclude refusing to give Ogutu's proposed jury instruction was not clearly erroneous and the trial court did not abuse its discretion.

## III. Admissibility of Evidence

### A. Standard of Review

We review a trial court's determination of admissibility of evidence for abuse of discretion. Allen v. State, 813 N.E.2d 349, 361 (Ind. Ct. App. 2004), trans. denied. A trial court's decision whether to admit evidence will not be reversed absent a showing of manifest abuse of that discretion resulting in the denial of a fair trial. Id. An error in the admission or exclusion of evidence is generally harmless unless it affects the substantial rights of a party. Id. (citing Coleman v. State, 694 N.E.2d 269, 277 (Ind. 1998)).

### B. Ogutu's Map

While Ngosi was testifying, Ogutu attempted to enter into evidence a map generated on the internet displaying the route between Ogutu's apartment and Ngosi's residence. In addition to highlighting the route, the document included the route's approximate distance and travel time, 2.64 miles and six minutes, respectively. Immediately preceding this, Ngosi testified he had driven to and from Ogutu's apartment on several occasions and that it typically takes six to ten minutes. He stated the various turns included in the route and implied it was approximately a few miles.

Even if Ogutu is correct that the map is admissible under the Indiana Rules of Evidence, he has not established that the exclusion of the map denied him a fair trial or

affected his substantial rights. The evidentiary point Ogutu was attempting to make by presenting the map – that he was only leaving I.O. for a short period of time and only traveling a few miles away – was already made by Ngosi's testimony. The map was duplicative of the evidence already presented, and, as such, the trial court's exclusion of the map did not result in Ogutu being denied a fair trial or affect his substantial rights.

## Conclusion

The evidence sufficiently demonstrates Ogutu knowingly placed I.O. in a position of harm by leaving him home alone. The trial court's refusal to give Ogutu's proposed jury instruction was not an abuse of discretion, and even if the map Ogutu attempted to admit into evidence was admissible, the trial court's rejection of such evidence did not result in an unfair trial or affect Ogutu's substantial rights because it was duplicative of evidence already presented. We therefore affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.