## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2016, 7:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Vernando Ross,
a/k/a Randle Jackson
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vernando Ross,
a/k/a Randle Jackson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

September 9, 2016

Court of Appeals Case No.
49A05-1510-PC-1567

Appeal from the Marion Superior Court.
The Honorable Grant W. Hawkins, Judge.
The Honorable Christina R. Klineman, Commissioner.
Cause No. 49G05-0611-PC-219268

**Garrard, Senior Judge**

[1]     Vernando Ross, a/k/a Randle Jackson, appeals from the post-conviction court's denial of his petition for post-conviction relief, raising various allegations of error. We affirm.

[2] A more detailed recitation of the facts adduced at trial can be found in this court's memorandum decision affirming Ross's convictions and sentence. *See Ross v. State*, No. 49A05-0803-CR-134 (Ind. Ct. App. October 17, 2008). To summarize, on the evening of November 2, 2006, Ross went to Willie Johnson's house to confront everyone present about a perceived lack of respect shown to Paul Baker, a man who had been living in Johnson's home for a few months. Johnson and Baker had not been getting along, and Johnson's landlord and friend, Sherrice Williams, wanted Baker out of the residence. After Ross appeared at the house, an argument ensued and quickly escalated.

[3] Lue Moffett, Johnson's nephew, walked from the back of the house and discovered Ross waiving a handgun and shouting profanities in front of the group. Ross instructed Moffett, who had his hands in the air, to go to a corner of the room. When Moffett did not do so, Ross fired a shot at Moffett's feet. Moffett rushed at Ross and the two struggled. Ross shot Moffett once in the groin, and then again in the right thigh, knocking Moffett to the ground. Johnson then tackled Ross, and as the two struggled, Ross fired his gun. Johnson suffered five gunshot wounds, two of which were fatal. While that struggle was occurring, Moffett ran from the house and called 911.

[4] The State charged Ross with murder, attempted murder, and carrying a handgun without a license. A jury found Ross guilty of all charges and the trial court imposed consecutive, advisory sentences of fifty-five years for murder and thirty years for attempted murder. The trial court imposed a one-year sentence for the handgun offense to be served concurrently with the murder sentence.

[5] On direct appeal, Ross challenged the sufficiency of the evidence of his attempted murder and murder convictions, the appropriateness of his sentence, and the trial court's denial of his motion for mistrial, alleging prosecutorial misconduct in closing argument. We affirmed his convictions and sentence, and the Supreme Court denied transfer.

[6] On February 19, 2013, Ross filed the pro se petition for post-conviction relief[1] which is the subject of this appeal. The State filed an answer denying Ross's allegations and asserting the affirmative defenses of waiver and res judicata. Bifurcated evidentiary hearings were held on December 11, 2013, June 25, 2014, and September 17, 2014.

[7] At the evidentiary hearing held on December 11, 2013, Jeffrey Baldwin, who was Ross's defense counsel, Leah Lewis, and Robert Baskin testified. The post-conviction court agreed to continue the evidentiary hearing to enable Ross to subpoena Andrea Davis, a woman to whom Ross had been engaged at the time of the crimes, and requested that he provide the court with Davis's address. At the hearing held on March 19, 2014, no witnesses testified. The post-conviction court agreed to continue the evidentiary hearing until June 25, 2014, and reissue a subpoena for Davis. Davis did not appear at the June 25, 2014 evidentiary hearing date. However, Sergeant Mark Prater was present and testified as a witness for both Ross and the State. The evidentiary hearing was

---

[1] Ross had previously filed a petition, but withdrew it. A copy of the petition for post-conviction relief that is the subject of this appeal is not in the record before us.

further continued to September 17, 2014, at which time Officer James Burton and Ross testified. Once again, Davis did not appear.

[8] During the course of the evidentiary hearings, numerous exhibits were admitted in evidence. Those exhibits include: the record of proceedings and appellate briefs from Ross's direct appeal; a copy of Moffett's pre-trial deposition; a copy of Sherrice Williams's pre-trial deposition; notes taken by Sergeant Prater; a transcript of the statement given by Williams to police; a transcript of Moffett's statement to police; an interdepartmental report from Detective Todd Lappin to Sergeant Prater; an interdepartmental report from Detective Kevin Duley to Captain Mark Rice; the deposition of Sergeant Prater; a transcript of a statement given by Julian Marshall to the police; a copy of the narrative section of a police report prepared by Officer Burton; a Rand McNally map and driving instructions from Sunset Strip Club to 348 W. 28th Street showing a travel time of nine minutes and forty-three seconds; phone records; a custodial interrogation form dated April 10, 2008, including Miranda rights advisements and waiver of rights signed by Ross and witnessed by Sergeant Prater; the audio recording of the statement given by Ross to Sergeant Prater on April 10, 2008; and the transcript of Ross's April 10, 2008 statement to Sergeant Prater. The trial court also took judicial notice of its file.

[9] After all evidence had been presented, the post-conviction court entered detailed findings of fact and conclusions of law denying Ross's petition, leading to this appeal.

[10]  A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014). A petitioner such as Ross, who appeals from the denial of post-conviction relief, appeals from a negative judgment. *Id.* at 269. As such, to prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* The trial court's findings of fact and conclusions of law, entered in accordance with Indiana Post-Conviction Rule 1, section 6, will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* We do not defer to the post-conviction court's legal conclusions. *Id.*

[11]  Ross's contentions on appeal can be divided into two categories: (1) ineffective assistance of trial counsel; and (2) post-conviction court error.

[12]  When reviewing a claim of ineffective assistance of counsel, we follow the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Id.* We must determine whether the petitioner established deficient performance by counsel, and whether the petitioner established prejudice resulting from counsel's errors. *Id.* Although this test involves two separate inquiries, a claim of ineffective assistance of counsel may be disposed of on either part of the test. *Dickens v. State*, 997 N.E.2d 56, 65 (Ind. Ct. App. 2013), *trans. denied*. Counsel's performance is presumed effective, and a petitioner must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

[13] Ross's trial counsel, Baldwin, testified that he is a criminal defense attorney who was admitted to practice law in 1987 and has exclusively practiced criminal defense since 1990. By the time Baldwin represented Ross, he had tried between fifty and one hundred jury trials and had handled many homicide cases.

[14] With respect to Ross's case, Baldwin testified that he had reviewed all of the discovery provided by the State before trial, provided copies of the discovery to Ross, took the depositions he felt were necessary to Ross's defense, and followed up on information provided by Ross and Andrea Davis. Pursuing leads and a potential alibi offered by Ross, Baldwin sent an investigator to the Sunset Strip Club, met with potential witness Julian Marshall prior to Marshall's arrest, engaged in numerous meetings with Ross at the jail to discuss the case, listened to all jail call recordings pertinent to Ross's case, and spoke with Ross about the jail calls to determine if Ross had any concerns about the content of those calls.

[15] Prior to trial, Baldwin filed several motions on Ross's behalf, hired an investigator to locate and interview witnesses, and conducted depositions. After the trial began, Baldwin voir dired the jury, moved for a separation of witnesses, presented an opening statement revealing the defense theory of the case—that someone other than Ross was the perpetrator, cross-examined sixteen witnesses, made objections at trial, moved for a mistrial when the State's closing involved a display which referred to Ross as "Ghetto godfather", and made a closing argument consistent with the defense theory of the case.

[16] Despite these efforts, Ross contends that Baldwin rendered ineffective assistance of counsel by failing to impeach Lue Moffett, the only eyewitness to testify at trial, with inconsistent statements.

[17] Our Supreme Court has consistently held that the method of impeaching a witness is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010). This includes situations, such as the one alleged by Ross, where there are inconsistencies between an out-of-court statement and in-court testimony of a witness.

[18] Moffett's testimony at trial covers nearly one hundred thirty pages of transcript, of which nearly forty pages is testimony on cross-examination. During that cross-examination, Baldwin elicited testimony from Moffett attacking his recollection of key points that were crucial to the State's case, challenging his credibility with evidence of drug and alcohol use at or near the time of the crimes, and attempting to create reasonable doubt that Ross was the perpetrator. While Ross's brief does list other inconsistencies in Moffett's testimony, Baldwin testified at the post-conviction hearing that he would not have asked questions on cross-examination that would either damage his client's case, evoke sympathy for the witness and against his client, or involve minute details. Baldwin explained that he had learned over years of criminal defense practice that none of these tactics proved to be persuasive to a jury.

[19] Ross also claims that Baldwin rendered ineffective assistance of counsel by failing to properly impeach Julian Marshall with inconsistent statements.

[20] Marshall's testimony covers nearly one hundred fifty-six pages of the trial transcript, approximately forty-three pages of which is testimony on cross-examination. During that cross-examination, consistent with the strategy to discredit Marshall's testimony, Baldwin emphasized that Marshall had received a deal from the State regarding other charges in exchange for his testimony against Ross. The tactic was to suggest that Marshall had a motive to lie in Ross's trial. Baldwin believed that if he had focused on each inconsistency or contradiction between Marshall's statements to him prior to trial and those made at trial, this tactic might have led to the admission of damaging evidence suggesting that Ross attempted to recruit Marshall to establish a false alibi and that Ross and Marshall were involved in dealing drugs.

[21] The trial court's findings that Baldwin's cross-examination of Moffett and Marshall were conducted according to tactical decisions of trial strategy is supported by the evidence and the findings support the trial court's conclusion that counsel was not ineffective for failure to impeach either witness by omitted lines of questioning.

[22] Ross further asserts that Baldwin was ineffective by failing to present alibi witnesses and suggests a failure to investigate. When an ineffective assistance of counsel claim alleges the failure to present witnesses, in this case, alibi witnesses, the petitioner must offer evidence as to who the witnesses were and

what their testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998). With respect to claims of failure to investigate, we give great deference to counsel's decisions. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). Counsel's duty is to make reasonable investigations or to make a reasonable decision making particular investigations unnecessary. *Id.* at 1284 (quoting *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695).

[23] Baldwin testified at the post-conviction hearing that he considered all potential witnesses Ross suggested might support his alibi. Ross's alleged alibi was that he was at the Sunset Strip Club at the time of the shootings. Baldwin spoke with Ross's girlfriend, Andrea Davis, on multiple occasions and followed up on the information she gave him. Baldwin hired investigator Larry Atwell to investigate Ross's alleged alibi. Atwell interviewed Leah Lewis and Andrea Thomas and then met with Baldwin to share his notes from those interviews and to discuss what he had learned. After investigating the alleged alibi, Baldwin discovered that the witnesses Ross had suggested placed Ross at the Sunset Strip Club earlier in the day on the date of the crimes, but not at the time the crimes occurred.

[24] Further, Lewis, who testified at Ross's evidentiary hearing, stated that Ross might have been at the Sunset Strip Club until 10:30 p.m. on the night of the crime, but agreed that her statements to the investigator in 2006 would be more accurate. Lewis, who was a bartender at the club, normally arrived for her shift between 9:30 and 10:00 p.m. She knew Ross was there the night of the crime because he became so angry at her when she cut off his alcohol supply that he

threw a pack of cigarettes at her. However, she stated that she could not testify with certainty exactly when Ross left the club that night. She also testified that she was unaware Ross had given a statement to police after his conviction and sentencing admitting that he had left the Sunset Strip Club, went to the location of the shooting, and shot the victims.

[25] While a failure to call a useful witness can in certain circumstances constitute deficient performance, the decision regarding which witnesses to call is a matter of trial strategy, which courts on review will not second-guess. *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). Additionally, trial counsel will not be deemed ineffective for not attempting a futile endeavor. *Allen v. State*, 686 N.E.2d 760, 780 (Ind. 1997).

[26] Here, Baldwin testified that he considered each of the witnesses Ross suggested could support his alleged alibi. However, none of the witnesses could place Ross at the Sunset Strip Club at the time of the crimes. Ross presented no evidence that his alibi witnesses told Baldwin or the investigator anything definitive about how long Ross was at the club. Furthermore, Ross later admitted to police that he left the club, went to the scene of the shootings, and shot the victims. Baldwin's decision not to call these witnesses was a matter of trial strategy. Ross has not shown that the outcome of his trial would have been different had those witnesses testified. The post-conviction court correctly determined that Baldwin's strategic decision with respect to these witnesses was not ineffective assistance of counsel.

[27] Next, Ross argues that Baldwin's representation was ineffective by failing to investigate the recorded phone calls between him and Marshall that were used by the State at trial. He claims that Baldwin should have objected to the admission of the recordings and should not have allowed the State to play them out of context. Baldwin testified that he reviewed the recorded phone calls between Marshall and Ross, which were provided by the State during discovery.

[28] Baldwin was aware that Ross referred to himself as "diabolical" in the recordings. P.C.R. Tr. p. 72. Although Baldwin had successfully reached an agreement with the State to redact portions of the calls due to their reference to other criminal acts, he did not believe there was a legal basis for redacting the "diabolical" references, because Ross used the term when identifying himself during those calls. Baldwin testified that he consulted with Ross after listening to the recordings to find out if there was any reason for concern about the content. Baldwin believed that he could not question Marshall about the jail phone calls in such a way that the calls could be characterized as only addressing drug deals because they also involved discussions of fabricating an alibi. He also believed that putting evidence of drug dealing in front of the jury was a bad strategy.

[29] In order to prevail on a claim of ineffective assistance due to the failure to object, the petitioner must show a reasonable probability that the objection would have been sustained if made. *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013). Ross has not established a reasonable probability that the objection

would have been sustained.  The post-conviction court did not err by rejecting Ross's claim.

[30] Ross also claims that Baldwin was ineffective by failing to reveal an alleged conflict of interest with respect to Marshall.  Among the guarantees provided by the Sixth Amendment is the guarantee to counsel whose undivided loyalties lie with his client.  *Coleman v. State*, 694 N.E.2d 269, 273 (Ind. 1998).  In order to establish a conflict of interest amounting to a violation of the Sixth Amendment, a petitioner must show that counsel actively represented conflicting interests such that it adversely affected his performance.  *Id.*  A mere possibility of a conflict of interest is insufficient to justify the reversal of a conviction.  *Id.*

[31] Baldwin represented Ross when he spoke to Marshall on behalf of Ross. Baldwin testified at the evidentiary hearing that he never served as Marshall's attorney before or after Marshall's arrest on his own charges, and stood nothing to gain with respect to Marshall at Ross's expense.  Baldwin testified that after Marshall's arrest he would not have spoken with Marshall without Marshall's attorney being present.  The decisions Baldwin made with respect to the impeachment of Marshall likewise do not support a claim of conflict of interest. The post-conviction court did not err with respect to this claim.

[32] Ross additionally argues that the post-conviction court abused its discretion by failing to take judicial notice of Marshall's deposition.  On October 31, 2014, after the close of evidence, Ross filed a motion requesting the post-conviction

court to take judicial notice of Marshall's pretrial deposition. The court denied the motion, stating that the court "cannot take judicial notice on requested material." Appellant's App. p. 15. The post-conviction court also denied Ross's motion to reconsider, in which he claimed to have "inadvertently failed to admit [the deposition] into evidence." *Id*. at 48.

[33] The admission and exclusion of evidence rests within the sound discretion of the post-conviction court, whose decision we review for an abuse of discretion. *Griffith v. State*, 31 N.E.3d 965, 969 (Ind. 2015). We will reverse the trial court's decision only when it is clearly against the logic and effect of the facts and circumstances before the court and the error affects a party's substantial rights. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[34] Indiana Evidence Rule 201 provides for the admission of certain facts or laws set forth in the rule. Depositions of witnesses are not among the kinds of material of which a trial court may take judicial notice. Although Ross offered and the post-conviction court admitted other depositions and evidence at the hearings, Ross did not introduce Marshall's deposition. The post-conviction court did not abuse its discretion by failing to take judicial notice of Marshall's deposition after the close of evidence.

[35] Ross further argues that the post-conviction court abused its discretion by failing to issue additional subpoenas for Baldwin and Davis and by excluding Davis's affidavit from evidence.

[36] Indiana Post-Conviction Relief Rule 1, section 9(b), provides in pertinent part that if a pro se petitioner requests the issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically set forth in an affidavit the reason the witness's testimony is required and the substance of the expected testimony. The rule further provides that the trial court shall order the issuance of the subpoena upon a finding that the proposed witness's testimony would be relevant and probative. P.-C.R. § 9(b). If, however, the trial court finds that the testimony would not be relevant or probative, the trial court shall enter the finding in the record and deny the issuance of the subpoena. *Id.*

[37] With respect to Baldwin, he testified at length at the evidentiary hearing. When the post-conviction court asked Ross at the September 17, 2014 hearing why he wanted to subpoena Baldwin for additional testimony, Ross replied that he wanted to cross-examine him about his strategy regarding documents Ross had been able to introduce at the hearing after Baldwin's testimony. Baldwin had previously testified that he had no recollection of the documents. The post-conviction court, when denying Ross's request, explained that, as the record stood, Ross could still make the argument that Baldwin either had the documents but chose not to use them, or that he was unaware of them without the need to subpoena Baldwin. Ross has not established an abuse of discretion on the part of the post-conviction court.

[38] With respect to Davis's testimony, the post-conviction court did not abuse its discretion by refusing to issue yet another subpoena for her testimony. The court had already continued the evidentiary hearing twice, but Davis failed to

appear for any of the three hearing dates. The court used addresses provided by Ross in an attempt to secure her presence at the hearing. The post-conviction court was within its discretion to refuse to issue another subpoena.

[39] As a substitute for Davis's testimony, Ross asked the trial court to admit a document Ross claimed was Davis's affidavit. The trial court did not admit the affidavit, citing the State's right to cross-examine Davis. Additionally, Ross did not establish a proper foundation for the admission of the document. The post-conviction court did not abuse its discretion.

[40] In light of the foregoing, we affirm the decision of the post-conviction court.

[41] Affirmed.

Robb, J., and Crone, J., concur.