Duane M. REDDING, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0508–CR–495.

Court of Appeals of Indiana.

April 4, 2006.

Rehearing Denied June 6, 2006.

Jason A. Childers, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Duane M. Redding appeals his conviction for Child Molesting,[1] a class A felony. Specifically, Redding argues that the trial court improperly excluded evidence of a prior molestation of the victim.[2] Finding that Redding's Sixth Amendment right to cross-examine the witnesses was violated, we reverse the

---

1. Ind.Code § 35–42–4–3(A)(1).

2. Redding also appeals from his fifty-year sentence, but because we are reversing on the evidentiary issue, we need not reach the sentencing issue.

judgment of the trial court and remand for a new trial.

## FACTS

M.F. was born on March 17, 1995. In the summer of 2000 or 2001, M.F. spent the night at the apartment of her mother's friend, Laura Gaus, in Anderson. Redding also stayed at Gaus's apartment that evening, and during the night, he forced M.F. to submit to sexual intercourse with him. M.F. did not tell anyone about the incident until 2003 when she was with her father and brother, and they encountered Redding at a restaurant.

The State charged Redding with child molesting on September 23, 2003. The jury trial began on April 12, 2005. Redding maintained that he never had any inappropriate contact with M.F., and in support thereof, he made offers of proof to introduce evidence of a prior molestation of M.F. by Paul Degraffenreid pursuant to Indiana Evidence Rule 412(2), to show that M.F. was wrongly accusing Redding of committing the acts that Degraffenreid had actually committed. After the offers of proof, the trial court found that M.F. did not confuse Redding with Degraffenreid and denied Redding's request to cross-examine M.F. in front of the jury regarding the prior molestation.

Dr. Roberta Ann Hibbard testified to the jury regarding the medical exam she conducted of M.F. in March 2003. Dr. Hibbard testified that M.F.'s hymenal tissue was missing and that that was "the sort of thing that you may see as a result of a penetrating injury to the genitals." Appellant's App. p. 198.[3] Dr. Hibbard also

---

3. We remind counsel that Indiana Appellate Rule 50(C) states, "The table of contents shall specifically identify each item contained in the Appendix, including the item's date." Labeling the first 130 pages of the Appellant's Appendix as "Clerk's Record" is insufficient to apprise the court of precisely which docu-

acknowledged that M.F.'s condition could have come from a previous injury or was an unusual variation in M.F.'s physical makeup and that she could not determine what had caused the injury, when it had happened, or who had caused the injury. Redding made another offer of proof that the jury should hear evidence of the prior molestation because Dr. Hibbard knew that M.F. had been previously molested and that this evidence could explain any hymenal tissue abnormality. Again, the trial court did not permit the evidence of the prior molestation because the report of Dr. Ron Beahm, who examined M.F. following the prior molestation, did not indicate any hymenal tissue abnormality. Redding requested a continuance to subpoena Dr. Beahm to testify, but the trial court denied the motion.

Ultimately, the jury convicted Redding as charged. At the sentencing hearing, the trial court found Redding's criminal history as an aggravator and no mitigators. The trial court therefore found that the aggravators outweighed the mitigators and sentenced Redding to the maximum term of fifty years. Redding now appeals.

## DISCUSSION AND DECISION

### I. Evidence of Prior Molestation

Redding first argues that the trial court erred in preventing him from introducing evidence regarding the prior molestation of M.F. Specifically, he asserts that he was improperly denied the right to cross-examine witnesses and to confront the evidence presented against him.

 We note that the admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only

ments are contained in the record and where

for an abuse of that discretion. *State v. Lloyd,* 800 N.E.2d 196, 198 (Ind.Ct.App. 2003). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. *Id.* As a rule, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. *Coleman v. State,* 694 N.E.2d 269, 277 (Ind.1998). In determining whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact. *Id.*

 The right of an accused in a criminal trial to due process includes the opportunity to examine the prosecution's witnesses for purposes of challenging their testimony as well as the right to put before a jury evidence that might influence the determination of guilt. *Saylor v. State,* 559 N.E.2d 332, 335 (Ind.Ct.App.1990). "The right to confront and cross-examine witnesses and to present evidence on one's own behalf are critical for ensuring the integrity of the factfinding process, and essential to a fair trial. Even so, these protections are not absolute; they may in appropriate cases yield to other legitimate interests in the criminal trial process." *Id.* (citations omitted). State-imposed restrictions on the types of questions that defense counsel may ask during cross-examination and on the defense's ability to offer otherwise relevant and material evidence may not be arbitrary or disproportionate to the purposes they are designed to serve. *Id.*

The admission of evidence regarding M.F.'s prior molestation is regulated by

they may be found.

Indiana Evidence Rule 412(a), which states:

(a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:

(1) evidence of the victim's or of a witness's past sexual conduct with the defendant;

(2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;

(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or

(4) evidence of conviction for a crime to impeach under Rule 609.

Redding's theory of defense was that he had never had any criminal contact with M.F., and that any physical evidence demonstrating that M.F. had been sexually abused was the result of a previous molestation by Degraffenreid. Redding argues that the trial court erred in denying him the ability to cross-examine both M.F. and Dr. Hibbard regarding the previous molestation and in denying his request to subpoena Dr. Beahm to testify regarding his examination of M.F. after the prior molestation.

Redding contends that the trial court erred in preventing him from cross-examining Dr. Hibbard regarding the prior molestation with regard to the physical evidence of sexual abuse suffered by M.F. Dr. Hibbard testified that she had examined M.F. and found that there was an area where M.F. had no hymenal tissue and another area where the tissue was narrower on one side. Tr. p. 231. Dr. Hibbard stated that the condition of M.F.'s hymen was consistent with a penetration-type injury. Tr. p. 233. But Dr. Hibbard also testified that she could not determine when the injury occurred, who or what inflicted the injury, or even if the abnormal hymen was an injury or simply an unusual variation in M.F.'s physical makeup. Tr. p. 232–33. She specifically testified that "[t]his could of [sic] come from a previous injury." Tr. p. 232.

Dr. Hibbard's testimony did not leave the jury with the inference that only Redding could have caused this injury to M.F., but that is not conclusive of this issue. The issue here is not whether Dr. Hibbard left the jury with the inference that *only* Redding could have caused the injury to M.F., but whether the jury would likely presume that hymenal damage to a six-year-old girl was the result of the alleged molestation. *See Tague v. Richards*, 3 F.3d 1133, 1138 (7th Cir.1993).[4] In the context of the Indiana Rape Shield Statute and the Sixth Amendment right to cross-examine witnesses, this is known as the risk of "partial corroboration."

Our courts, as well as the Seventh Circuit Court of Appeals, have described partial corroboration as follows:

In partial corroboration, once there is evidence that sexual contact did occur, the witness's credibility is automatically "bolstered." This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be

4. The Seventh Circuit affirmed the denial of habeas corpus relief but nullified our Supreme Court's decision in *Tague v. State*, 539 N.E.2d 480 (1989), insofar as the supreme court held the Indiana Rape Shield Statute was not unconstitutional as applied. While our Supreme Court addressed only whether one of the exceptions to the statute applied, the federal court based its holding on a constitutional analysis under the Sixth Amendment's Confrontation Clause. The Seventh Circuit did not grant Tague's petition because the court found the constitutional error was harmless.

accurate in stating that the defendant was the perpetrator. Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator.

In other words, the risk of partial corroboration arises when the State introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the State has placed at issue.... We emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpetrators, an inquiry which would violate the Rape Shield Statute.

*Turney v. State,* 759 N.E.2d 671, 676 (Ind. Ct.App.2001) (quoting *Steward v. State,* 636 N.E.2d 143, 149 (Ind.Ct.App.1994), *aff'd* 652 N.E.2d 490 (Ind.1995)); *see also Tague,* 3 F.3d at 1138.

■ Here, there was evidence that M.F. suffered a penetrating injury to the genitals. Because of this, an issue before the jury was how these injuries happened to a six-year-old girl. Therefore, the trial court should not have prevented Redding from attempting to prove that those injuries could have been caused by the Degraffenreid molestation by cross-examining Dr. Hibbard about the prior molestation.

Redding also argues that the trial court erred in preventing him from cross-examining M.F. on the prior molestation. The trial court heard Redding's offer of proof regarding M.F. outside the hearing of the jury. Redding's counsel questioned M.F. about whether Degraffenreid had done "something bad" to her. Tr. p. 122–24. The trial court then asked M.F. whether the things Degraffenreid had done to her were the same as or different from the things that Redding had done. M.F. replied that it was "[s]omething different." Tr. p. 124. The trial court then asked M.F. if Degraffenreid had molested her before or after Redding, and M.F. replied, "Before." Tr. p. 124. Based on these answers, the trial court was satisfied that M.F. understood that the molestation by Degraffenreid was a separate incident that occurred at a different time. But as we noted above, the issue is whether Redding should have been allowed to rebut the inference that he caused M.F.'s injuries. The issue is not whether M.F. understood that Degraffenreid had molested her on a previous occasion. Therefore, the trial court should have permitted Redding to cross-examine M.F. regarding the prior molestation as well.

The judgment of the trial court is reversed and remanded for a new trial.

NAJAM, J., and BAILEY, J., concur.