## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Jul 07 2020, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory Dewell Simpson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | July 7, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2151<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>The Honorable Anne Flannelly, Magistrate<br><br>Trial Court Cause No.<br>49G04-1905-F5-18105 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Gregory Simpson was found guilty of battery by means of a deadly weapon, a Level 5 felony, and was subsequently found to be an habitual offender. Simpson appeals, raising one issue for our review which we restate as whether the trial court abused its discretion in excluding certain evidence. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] On May 8, 2019, Simpson and his cousin, Jessie Stewart, attended a family barbeque. Everyone was "laughing and joking, having fun, [and] drinking." Transcript, Volume 2 at 90. After a few hours, Simpson got in his truck to leave and Stewart asked where he was going. Simpson responded, "[C]ome and ride with me cuz[,]" *id*. at 93, and Stewart got in the truck. Before they left, Simpson asked a woman standing nearby if she wanted a sandwich he had in his truck, but she declined. The woman's last name was also Stewart, but she was not related to Jessie. Stewart was not sure if Simpson "was just making conversation with her to get her attention or what[,]" *id.* at 94, but at some point, he joked with Simpson, saying "she laughed at you about that . . . sandwich that you offered her," *id.* at 95.

[3] The two men then drove to a nearby restaurant to meet a man who had asked Simpson to check the brakes on his car. When Simpson finished inspecting the vehicle, Simpson and Stewart left. While they were driving, Simpson said,

"don't mess with the sandwich" and Stewart responded jokingly, "Well, if nobody wants it. The female already told you she didn't want it[.]" *Id.* at 96. Simpson mumbled to himself, "I can't stand you, I'll kill you. I'll kill all you Stewarts." *Id.* at 95. Stewart asked, "[W]hy do you want to do something like that?" and Simpson hit Stewart in the face with his fist. *Id.* at 97. Stewart hit Simpson back a couple of times and asked Simpson to pull over and let him out. Simpson did not pull over; instead, he sped up, grabbed a sharp object with a blade,[1] and repeatedly swung it at Stewart. When Simpson slowed down for a red light, Stewart escaped from the vehicle and called 911. Stewart had cuts on his hand, wrist, and face. Emergency personnel responded and took Stewart to the hospital where he identified Simpson as his assailant.

[4] The State charged Simpson with battery by means of a deadly weapon, a Level 5 felony, and later added an habitual offender enhancement alleging Simpson had three prior unrelated felony convictions. On July 29, 2019, while Simpson was in jail awaiting his jury trial that was set to begin on August 1, he placed a phone call during which he explained his version of events. Simpson said that Stewart went through his glove compartment, stole his change, and initiated the fight between the two, forcing Simpson to use the sharp object to hit Stewart. *See id.* at 141-42. The day before Simpson's jury trial, Simpson and the State signed a stipulation to the "following facts":

---

[1] Stewart referred to the sharp object as a machete, but Simpson identified it as a lawnmower blade. *See id.* at 97, 150.

1. Deputy John D. Nelson is a keeper of records for the inmate call records of the Marion County Sheriff's Office.

2. Telephone calls made by all inmates in the custody of the Marion County Sheriff's Department are digitally recorded.

3. All such calls are recorded except those which are specifically designated as "attorney phone calls" and which are therefore protected by the attorney-client privilege.

4. All inmates are notified that the calls are recorded and/or monitored by way of the Inmate Handbook and by an automated message played at the beginning of each call.

5. These calls are held in a database, access to which is limited to authorized individuals only.

6. These calls are maintained in digital form and cannot be altered in any way; the unique software necessary to listen to these calls does not allow tampering or alteration in any way.

7. Deputy John D. Nelson has a duty to maintain these calls to ensure they are secure and accurate.

8. The recordings of all calls are created as the calls are made, and it is the regular practice of the Marion County Sheriff's Office to do so.

9. Gregory Simpson was in the Marion County Jail on July 29, 2019.

10. On July 29, 2019, Gregory Simpson called telephone number 317-4xx-xxx8.

11. John D. Nelson listened to the call and verified the call from Gregory Simpson to 317-4xx-xxx8 on July 30, 2019 and it is a secure and accurate copy.

12. State's Exhibit 12 is a true and accurate copy of the jail phone call from Gregory Simpson on July 29, 2019.

13. *This stipulation is binding upon the parties and is irrevocable upon execution, and all items of evidence referenced herein are admissible into evidence in this cause.*

Appellant's Amended Appendix, Volume II at 197-98 (emphasis added).

[5] Simpson's counsel did not intend to call Simpson as a witness at trial, nor did he anticipate calling any other witnesses. Instead, after the State rested, Simpson's counsel moved to admit into evidence the audio recording of Simpson's jail call pursuant to the stipulation. The State objected on the basis that it "would be inadmissible hearsay for [Simpson] to be able to play his own jail call as a statement." Tr., Vol. 2 at 138. Although the State "inten[ded] to play the jail call if [Simpson] had testified [and] consider[ed] playing it in [its] case in chief," it decided against it. *Id*. The State further explained that it believed the parties were stipulating to the recording's authenticity – that "for purposes of an objection that the call was not authentic, that we would not need to call the keeper of the record. That we were stipulating to the fact that the call was, in fact, made." *Id*.

[6] Simpson's understanding, however, was that because "we redacted out [what] we agreed [was] inadmissible," the stipulation was to the "admissibility and not

mere authenticity[.]" *Id.* at 139. The stipulation did not mention a redacted version of the jail call. The redacted version of the jail call was played for the trial court outside the presence of the jury. The trial court ruled the redacted audio recording was inadmissible, explaining that "the defense cannot put into evidence, in lieu of the defendant's testimony, inadmissible hearsay through any type of stipulation here." *Id.* at 144.

[7] The trial court asked how Simpson would like to proceed, and he asked and was allowed to make a record about the exclusion. Simpson argued the State's position was "prejudicial to Mr. Simpson's right to a defense under the United State's [sic] Constitution" because "we prepared our case in reliance upon this stipulation and reliance upon that jail call coming in." *Id.* at 145. The State responded that the stipulation was executed "last evening – I believe it was around 5:30[,]" and that exclusion was not prejudicial to Simpson in any way. *Id.* at 146. Simpson agreed with the State's timeline, but again argued that but for the stipulation, "we would have spent more time preparing Mr. Simpson's direct testimony." *Id.* at 147. The trial court then asked defense counsel if he would like to speak with Simpson about whether or not he was going to testify. Defense counsel briefly conferred with Simpson and requested thirty minutes to prepare Simpson to testify, which the trial court granted.

[8] After the thirty-minute recess, Simpson testified to the same version of events that he had related in the jail call. At the conclusion of the evidence, the jury found Simpson guilty of battery by means of a deadly weapon, a Level 5 felony, and subsequently found him to be an habitual offender. The trial court

sentenced Simpson to twelve years to be served in the Indiana Department of Correction, with five years suspended. This appeal followed.

# Discussion and Decision

## I. Standard of Review

Our standard of review in this area is well settled. When reviewing the admission or exclusion of evidence, we review for an abuse of discretion. *Troutner v. State*, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). Generally, errors in the exclusion of evidence are harmless unless they affect a party's substantial rights, and to determine that, we assess what the probable impact of that evidence would have been on the trier of fact. *Redding v. State*, 844 N.E.2d 1067, 1069 (Ind. Ct. App. 2006).

## II. Exclusion of Evidence

Simpson argues the trial court abused its discretion by excluding evidence of his jail call after the State stipulated that it would be admissible. He asserts that he was prejudiced by the exclusion of the jail call because the State gained "an unfair tactical advantage" and his "defense was based upon the admissibility of the in-custody call." Brief of Appellant at 8-9. The State argues the trial court properly excluded the evidence because the redacted version of the call was not

part of the stipulation, the stipulation did not "bind the trial court[,]" and "independent considerations of justice" supported the trial court's exclusion of the evidence. Brief of Appellee at 10.

[11] As relevant to the issue before us, Simpson directs us to paragraph 13 of the stipulation, which stated: "This stipulation is binding upon the parties and is irrevocable upon execution, and all items of evidence referenced herein are *admissible into evidence in this cause*." Appellant's Amended App., Vol. II at 198 (emphasis added). Simpson maintains that the State was bound by the agreement it drafted because the language was unambiguous and therefore, the jail call should have not been excluded from evidence. Br. of Appellant at 10-11.

[12] A stipulation is defined as "an agreement between counsel with respect to business before a court." *State v. Lewis*, 883 N.E.2d 847, 852 (Ind. Ct. App. 2008) (citation and internal quotation omitted). Such stipulations are contracts between the State and the defendant and therefore, contract law principles control their use and interpretation, including the well-settled doctrine that any ambiguity is to be construed against the one who prepared it. *Willey v. State*, 712 N.E.2d 434, 440 (Ind. 1999).

[13] Although the parties disagree as to whether or not they stipulated to the audio recording's *admissibility* despite the language of the stipulation, our courts have consistently held that parties may not stipulate to a question of law – this determination is for the trial court to make, not the parties. *See Pond v. McNellis*,

845 N.E.2d 1043, 1055 (Ind. Ct. App. 2006) (stating that "questions of law are beyond the power of agreement by the attorneys or parties, [and] any agreement purporting to stipulate to a question of law is a nullity") (internal quotation omitted), *trans. denied; cf. Willey*, 712 N.E.2d at 439 (noting that notwithstanding a stipulation between the State, the defendant, and defense counsel providing for the defendant to submit to a polygraph test and the subsequent admission at trial of the results, "the admissibility of the test results is at the trial court's discretion"). As such, the State and Simpson were free to stipulate to the facts surrounding the jail call, but to the extent they attempted to stipulate to a question of law – in this case, the admissibility of evidence – the stipulation was ineffective. Therefore, the admissibility of the jail call Simpson offered into evidence was at the discretion of the trial court notwithstanding the stipulation.

[14] The trial court did not abuse its discretion in determining the jail call was inadmissible hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. *See* Ind. Evid. R. 801(c). Hearsay is not admissible unless it fits within one of the delineated exceptions to the hearsay rule. *Cole v. State*, 970 N.E.2d 779, 782 (Ind. Ct. App. 2012); *see also* Evid. R. 802, 803 and 804. The jail call is classic hearsay, as it was offered into evidence to prove the truth of the facts Simpson related during the call. And after the trial court ruled that the jail call would be excluded as inadmissible hearsay, Simpson did not offer any exception under which the jail call should have been

admitted and we can find none.[2] Therefore, the trial court did not abuse its discretion in excluding the evidence.

[15] Assuming *arguendo* that the trial court did abuse its discretion, we do not agree with Simpson that his defense was unfairly prejudiced by the State objecting to and the trial court excluding the evidence. Despite the jail call being made only three days before trial and the stipulation being entered on the eve of trial, Simpson contends that he relied on the stipulation in preparing his defense and would have prepared differently had he known the jail call would not be admitted into evidence. Simpson's argument is unpersuasive because given the timeline of when the jail call was made and when the stipulation was entered, his reliance on the jail call could not have been as detrimental as he suggests. Further, Simpson's argument that he was forced to prepare to testify in thirty minutes is incorrect. The trial court asked defense counsel how much time he needed to prepare for Simpson's direct examination, and it was defense counsel who requested thirty minutes, not the State or the trial court.

[16] Simpson further argues the State gained a "tactical advantage" over him because the State had already presented its case-in-chief and he had already conducted his cross-examination of the State's witnesses. Br. of Appellant at 12.

---

[2] Indiana Evidence Rule 801(d) lists two exclusions from the hearsay rule: a statement is not hearsay if, among other things, the "declarant testifies and is subject to cross-examination about a prior statement[,]" Evid. R. 801(d)(1), or if it is "offered against an opposing party" and "was made by the party[,]" Evid. R. 801(d)(2)(A). Here, the jail call was not a prior statement because Simpson intended to use it in lieu of testifying and it was not an opposing party's statement because Simpson was offering it *for himself*.

But Simpson has not demonstrated how he would have cross-examined the State's witnesses differently or how that would have produced a different result if he had known he would be testifying. Finally, the fact that the "jury heard additional evidence" beyond what was in the jail call is the nature of the adversary system. *Id.* at 12 (Simpson arguing that the jury heard evidence of "the State's reference to a letter Simpson wrote asking for the case to be dismissed"). Simpson does not get to determine the evidence the jury hears by "testifying" through a jail call that was not subject to cross-examination.

Simply put, after the trial court made its ruling, Simpson testified to his version of events, which was almost identical to the version of events he related in the jail call. Because Simpson's testimony mirrored that of the jail call, the exclusion of the jail call had no probable effect on the jury and therefore, we conclude there was not a substantial likelihood that the exclusion of Simpson's jail call affected the verdict. *See Redding*, 844 N.E.2d at 1069.

# Conclusion

The trial court did not abuse its discretion in excluding evidence of Simpson's jail call. Accordingly, we affirm Simpson's conviction.

Affirmed.

May, J., and Vaidik, J., concur.