# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2020, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Badre Faridi,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 16, 2020

Court of Appeals Case No.
19A-CR-1697

Appeal from the
Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

The Honorable
Eric S. Ditton, Magistrate

Trial Court Cause No.
20D03-0610-FA-52

**Altice, Judge.**

# Case Summary

A jury found Badre Faridi guilty of one count of Class A felony child molesting and two counts of Class C felony child molesting for acts committed upon his stepdaughter, H.S. The trial court sentenced him to an aggregate term of fifty-two years. He appeals and raises two issues:

> I. Did the trial court abuse its discretion when it did not allow Faridi to present evidence regarding what he alleged was a prior false accusation made by H.S. and regarding a possible alternative perpetrator?

> II. Is his sentence inappropriate in light of the nature of the offense and the character of the offender?

We affirm.

# Facts & Procedural History

H.S. was born in September 1997. When she was six or seven years old, her mother (Mother) began an online dating relationship with Faridi, who at that time was living in Morocco. Mother, H.S., and her sister, S.S., who is about four years older than H.S., went to Morocco one summer and stayed for about three weeks with Faridi's family, after which Faridi came back and lived with Mother, H.S., and S.S. in their trailer in Nappanee, Indiana. At some point, Mother, daughters, and Faridi returned to Morocco for a second trip, again for three weeks, and Mother and Faridi got married. They returned to Nappanee and lived together in Mother's trailer. Around this time, two male friends of Faridi's moved into the residence as well.

[4] Shortly after their return to Nappanee and when H.S. was around eight years old, "things started happening," meaning Faridi started touching H.S. after school, while Mother was at work. *Transcript Vol. III* at 131. In one incident, Faridi confronted H.S. with a pornographic picture that he claimed he found in her backpack and scolded H.S. about it. The picture did not belong to H.S., and she believed Faridi had placed it there. Faridi told H.S. to take her clothes off or he would tell her mother about the picture. After she complied with his demand, he kissed her, rubbed her breasts, and ejaculated on her chest.

[5] H.S. recalled that on a second occasion Faridi showed her a different pornographic picture that he again claimed he found in her backpack. This time he had her "masturbate him" with her hand on his penis. *Id*. at 136. On another occasion, she and S.S. had been outside playing and H.S. got in trouble so Faridi called her inside and into his room. He directed her to remove her snow pants and sweatpants, and he spanked her. He then bent over her and began to penetrate her anally. Because he was unable to fully penetrate H.S.'s anus, he made her perform oral sex on him.

[6] In September 2006, H.S. told her elementary school counselor, Nicki Wiggins, about the incidents with Faridi because H.S. "felt trapped" and "wanted it to stop." *Id*. at 153. Wiggins contacted a child abuse hotline and then drove H.S. and S.S. to the Child and Family Advocacy Center (CFAC) for a forensic interview, where Gayla Konanz spoke separately to H.S. and S.S. H.S.'s interview with Konanz indicated that H.S. had been subjected to sexual abuse.

On September 21, 2006, H.S. saw Lynette Valentijn, M.D., a pediatrician who received the case as a referral from CFAC. H.S. reported experiencing pain while sitting, urinating, and defecating. Dr. Valentijn observed some redness in H.S.'s labia majora area, but no lacerations, tears, or scarring to her vagina or anus. In her report, Dr. Valentijn checked the box "nonspecific findings may or may not indicate sexual abuse." *Exhibits Vol.* at 8, 9. After H.S. made the report to Wiggins and Konanz, she did not return to live with Mother and Faridi in the family's residence and never lived with Mother again.

On October 13, 2006, the State charged Faridi with Count I, Class A felony child molesting for causing H.S. to submit to anal intercourse, Count II, Class C felony child molesting for causing H.S. to touch Faridi's penis, and Count III, Class C felony child molesting for caressing and kissing H.S. with the intent to arouse or satisfy sexual desires of H.S. or himself. The trial court issued an arrest warrant that day, but Faridi left the United States with Mother's help. At some point, Mother went to Morocco and lived with Faridi for a period of time. In 2017 or 2018, Faridi was located living in Canada and was extradited to Elkhart County to face the pending charges. On April 27, 2018, the 2006 warrant was formally served upon Faridi, and the initial hearing was held on May 1, 2018.

[9] On May 20, 2019, Faridi, by counsel, filed a Notice to Introduce 412 Evidence (Notice).[1]  The Notice asked the court to allow Faridi to introduce at trial evidence of two sorts:  (1) evidence of an alleged prior false accusation by H.S., namely that H.S. had made a statement to Wiggins that Faridi's "friends", who lived in the residence, would "hit [H.S. and S.S.] and touch S.S.'s breasts" and that S.S. later denied in a statement to law enforcement that Rozz had ever touched her breasts, and (2) evidence of possible "other cause of [] injury" to H.S., namely evidence that Said, who also lived in the residence, raped and touched S.S. and "could have been the true perpetrator" of the acts alleged by H.S.  *Appellant's Appendix* at 99.

[10] On May 29, the court held an *in camera* hearing on the Notice.  Faridi did not present the testimony of witnesses but offered into evidence Wiggins's notes of her conversation with H.S. at school on September 15, 2006 (Exhibit A) and Commander Mark Daggy's notes of his June 14, 2018 interview with S.S., who told Officer Daggy that Faridi raped her on multiple occasions in the home, as did Said, but that Rozz never touched her or H.S. (Exhibit B).  Faridi's counsel acknowledged that the exhibits were hearsay and not admissible at trial, but argued, "they are admissible for the court to consider whether or not I can ask questions of these witnesses [at trial] that are consistent with their prior

---

[1]As discussed more fully later in this decision, Rule 412 refers to Indiana Evid. Rule 412, sometimes known as the Rape Shield Rule.

statements." *Transcript Vol. II* at 17. The court admitted the exhibits, over the State's objection, for purposes of the pretrial hearing only.

[11] Regarding evidence of a prior false accusation, Faridi's counsel directed the court to a sentence in Exhibit A where Wiggins wrote, "Next [H.S.] shared that when her dad had two of his friends living with them, the friends would do things like hit the girls and touch her sister's, [S.S.'s], chest." *Exhibits Vol.* at 22. Because S.S. told Officer Daggy in June 2018 that Rozz had not touched either her or H.S., Faridi argued that H.S.'s statement about "the friends" touching S.S.'s breasts was "demonstrably false[.]" *Transcript Vol. II* at 20. That is, he argued, H.S. had made prior false accusation of sexual misconduct. The court noted that H.S.'s statement was not a false accusation that Faridi had molested her in the past, which was provided for in case law, but was "extending it to [H.S.] making an allegation against a different man for molesting a different person." *Id.* at 23. Faridi agreed this was "a new area that the case law doesn't touch," but that H.S. making a false accusation against someone regardless of the victim should be an area that the defense should be able to use for impeachment. *Id.*

[12] The State responded that, first, Exhibit A does not state that Rozz touched S.S.'s breasts; it says that Faridi's "friends" who also lived at the residence "would do things like" hit the girls, touch S.S.'s breasts, and laugh about it. Second, the fact that S.S. told Officer Daggy that Rozz did not touch her chest, was not proof that H.S. made a false accusation.

[13] There was discussion as to whether Wiggins and S.S. would be testifying at trial, and Faridi's counsel stated, "I completely understand that the court might want to take this [] under advisement until those witnesses actually can testify in person about the contents of the statement." *Id.* at 27. The trial court deferred making a ruling until trial on the prior false allegation issue, with Faridi's counsel agreeing to approach the bench before getting into any questioning on the matter.

[14] Regarding evidence that someone else may have been the person who caused injury or pain to H.S., more specifically the pain to her anus, Faridi referred the court to Exhibit B, where S.S. reported to Officer Daggy that Said raped her "about three or four months after [Faridi] started." *Exhibits Vol.* at 24. Faridi's counsel admitted that H.S. had not given any statement indicating that Said had raped or touched her inappropriately, but urged that he "would like to at least be able to cross-examine her as to the possibility of that being the case." *Transcript Vol. II* at 32. The court recognized a line of Indiana cases that discuss the "partial corroboration doctrine," which provides that when the State presents other "virtually irrefutable" evidence such as medical evidence to show actual injury, it bolsters the victim's assertion that molestation occurred and "opens the door for the defense to say I want to present evidence that somebody else did it." *Id.* at 36. However, the court observed, other Indiana case law provides that the partial corroboration exception is inapplicable if there was no such medical evidence and the victim was "resolute" that the defendant was the person who molested him or her. *Id.*

[15]     The State argued that, in this case, there was no medical evidence of actual injury to H.S.'s anus – no doctor saying "I saw injury" – and the only evidence of injury was H.S.'s statement to her doctor that she felt pain to her anus, that is, no medical evidence to "partially corroborate" H.S.'s claims. Accordingly, the State argued, the partial corroboration doctrine was inapplicable to allow Faridi to present evidence that someone else caused injury to H.S., and because H.S. was firm that Faridi molested her, evidence of a possible other perpetrator was inadmissible. The trial court ultimately decided that the court's ruling on the admission of the requested evidence was dependent on what the State presented in its case-in-chief and, therefore, took the matter under advisement. The court cautioned Faridi's counsel to advise the court before pursuing questions regarding whether someone else committed the acts against H.S., so that the court could first remove the jury from the courtroom, hear testimony, and make a ruling.

[16]     The case proceeded to jury trial on June 3-5, 2019. This was the first time H.S., now twenty-one years old, had seen Faridi since making her report to Wiggins and Konanz. The State's witnesses included: Wiggins, Konanz, Brook German, Dr. Valentijn, and H.S. The defense did not call any witnesses.

[17]     Wiggins, the school counselor, testified that she saw both H.S. and S.S., but H.S. more often. She first saw H.S. as a referral from H.S.'s first or second grade teacher, who had noticed that H.S. was experiencing emotional issues in class, often seemed sad, would come to school upset, and cried for reasons that most other children would not. At first, she met with H.S. approximately once

every other week, but sometimes more frequently at H.S.'s request. There came a time that Wiggins learned from H.S. and S.S. that Mother was in an online relationship and that she planned to bring that person into the home, which "very much" concerned Wiggins. *Transcript Vol. II* at 118. Wiggins was aware that Mother married the person and he came to live with the family. Wiggins observed that H.S. developed a lot of irrational fears and seemed more stressed than she had been, and she noted that this correlated in time with Mother's new husband coming to live with them. Over time, H.S. told her things that "raised a few red flags." *Id*. at 122. Based on some statements that H.S. made to her on September 15, 2006, involving being scared to go home and her stepfather locking the door and pornography, Wiggins contacted a child abuse hotline.

[18] Konanz testified that she interviewed H.S. at the CFAC for approximately forty minutes. Konanz felt that H.S. used words and phrases for body parts and actions that seemed "advanced" for an eight-year-old child. *Id.* at 228. For instance, H.S. described one of the acts that was performed as a "short cut" and showed Konanz a motion, holding her hand "in kind of a circle" and moving her hand back and forth, and told Konanz that there was a sticky substance that "was so sticky that the soap wouldn't get it off of her hands[.]" *Id*. at 229. Konanz testified that H.S. disclosed sexual abuse.

[19] Dr. Valentijn testified about her examination of H.S. on September 21, 2006, and the written assessment and treatment form she completed. She described that her job in this situation was to review H.S.'s disclosure to the CFAC and then conduct an examination while trying not to make further inquiries of the

patient regarding the allegations. Dr. Valentijn marked on the form that no medical follow-up was required but, in terms of general healthcare, she recommended counseling for H.S. She stated that in this case she did not reach any conclusion as to whether sexual abuse had occurred or not occurred.

[20] Detective Brook German testified to interviewing H.S. in 2017, when H.S. was nineteen, to inquire about H.S.'s recollection of events. In that interview, H.S. did not indicate that any person other than Faridi had molested her. On cross-examination, Faridi inquired about the initial investigation in 2006. At that time Det. German was working in narcotics and did not handle the Faridi investigation, but confirmed that during the initial investigation the Nappanee Police Department did not take pictures of the trailer, check the family's or Faridi's computer for pornographic searches, or speak to Said or Rozz. In 2017, Det. German attempted to contact Rozz, who lived in Nappanee, but was not successful. Det. German had no information as to how to contact Said.

[21] H.S. testified to the circumstances of the three charged acts and stated that there were other occasions where Faridi required her to perform sex acts with him. When asked if it occurred every day when Mother was at work, she stated, "I mean, there were days where he didn't do anything . . . – like it was most of the time when she was at work." *Transcript Vol. III* at 133. When asked why she told Wiggins about what was happening with Faridi, H.S. replied, "Because I knew my mom wouldn't believe me, and even when I tried telling her, she didn't believe me." *Id.* at 153. H.S. stated that when she had tried to tell her Mother about the incidents, Faridi yelled in her face and told her to "prove it,"

and Mother called her "a liar." *Id.* at 247. H.S. testified that she was not in contact with Mother and did not know where Mother was living.

[22] At a point during H.S.'s testimony, the jury exited so that the parties could discuss the Rule 412 issues and question H.S. out of the jury's presence. As to the alleged prior false allegation, Faridi asked H.S. whether she remembered saying to Wiggins that "not only Said touched your sister's chest but also Rozz touched your sister's chest," and H.S. replied that she did not remember saying that. *Id.* at 210. Faridi's counsel then showed her Wiggins's notes, in which Wiggins stated that H.S. told her Faridi's "friends" "would do things like" hit the sisters and touch S.S.'s chest. *Id.* H.S. reaffirmed that she could not recall ever saying that Rozz had touched S.S.'s chest. Faridi advised the trial court that he intended to call Wiggins to ask her whether H.S. had said that Rozz touched S.S.'s chest, which Faridi's counsel argued would demonstrate was a false accusation given S.S.'s June 2018 statement to Officer Daggy that Rozz did not molest her.

[23] The trial court determined that the prior false accusation evidence was not admissible:

> COURT: Well, then I think that we can settle this "412" false allegation stuff right now. I'm not letting it in[.]
>
> * * *
>
> COURT: . . ."412" itself is a robe [of] exclusion and not inclusion. . . . in researching all these cases, . . . [if] . . . you had

evidence that H.S. made a false accusation against your client that turned out to be either demonstrably false or she recanted and admitted it was a lie, I think that that's exactly what "412" would allow you – and the case law supports you.  You are wanting to stretch that to allow evidence that the victim [indiscernible] claimed . . . someone else was molested by another man who's not on trial.  I do not believe the rape-shield statute will allow it.  It is too – just too far removed, and I don't think the case law will allow that either.  So I'm not – I'm not letting this kind of stuff come in at all.  I don't know if that changes your mind on calling Ms. Wiggins.  If you want to call Ms. Wiggins, it's going to be outside of the presence of the . . . jury.  . . .

*Id*. at 214-15.  In reaching its decision, the court observed that, not only was the evidence "too far removed," but also H.S.'s allegation "may not have been false."  *Id*. at 223.  Faridi elected not to call Wiggins, and he made an offer of proof that Wiggins would have said what she recorded in her notes, i.e., that the friends hit the girls and touched S.S.'s chest, and that he would have then offered S.S.'s statement to Officer Daggy (saying that Rozz never touched her inappropriately) to impeach H.S.

[24]  As to the other Rule 412 evidence, the possibility of a different perpetrator, Faridi asked H.S. out of the jury's presence whether she remembered telling either Konanz or Wiggins that she saw Said touch S.S., and H.S. stated that she did not remember telling them that and she did not remember ever seeing Said touch S.S.  H.S. did remember witnessing Said put his hands down the pants of S.S.'s friend.  The State asked H.S. who committed the three sexual acts upon her that she had described to the jury, and she unequivocally stated it was

Faridi. The trial court then asked her if she had any confusion that it might have been Said or Rozz, and H.S. said "[n]o" and confirmed that the only person that sexually abused her was Faridi. *Id.* at 221.

[25] Faridi's counsel argued that because Said had molested other children in the household and there was evidence that H.S. suffered injuries during the same period, he could admit evidence of another possible cause of the injury under Rule 412. He further argued that Rule 412 did not apply because S.S's friend was not a victim or witness in the case. The State responded that for this exception to apply, there needed to be significant medical testimony of an injury, providing partial corroboration of the victim's claims, and, here, Dr. Valentijn had not observed any visible laceration, tear, or scarring, and only observed redness to H.S.'s labia majora area. The State also argued that there was no "nexus" between Said and the pain in H.S.'s anus because H.S. was firm and consistent about the identity of who had touched her. *Id.* at 231.

[26] The trial court denied Faridi's request to present evidence of another possible perpetrator because (1) there was no medical evidence that H.S. had suffered an injury, and (2) H.S. had consistently stated in 2006 and at trial that Faridi was the only person who had molested her. The court further noted that even if Rule 412 would not bar this evidence, the probative value of the evidence would be outweighed by unfair prejudice and would confuse the jury.

[27] The jury found Faridi guilty of the three charged offenses. On June 27, 2019, the trial court sentenced him to forty-four years on the Class A felony child

molesting conviction, and to four years on each of the two Class C felony child molesting convictions, all to run consecutive to each other, for a total of fifty-two years. Faridi now appeals. Additional facts will be provided as necessary.

# Discussion & Decision

## I. Rule 412 Evidence

[28] Faridi argues that the trial court erred when it did not allow him to present certain evidence. The decision to admit or exclude evidence is a matter within the trial court's sound discretion. *Watson v. State*, 134 N.E.3d 1038, 1042 (Ind. Ct. App. 2019), *trans. denied*. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. The decision to exclude evidence is given great deference on appeal and will be reversed only when a manifest abuse of discretion denies the defendant a fair trial. *Id*. There is a strong presumption that the trial court acted properly. *Id*.

[29] Here, Faridi sought permission before and during trial to be able to present evidence pursuant to exceptions to Rule 412, which, as previously noted, is more commonly known as the Rape Shield Rule. Rule 412 incorporates the principles of Ind. Code § 35-37-4-4, Indiana's Rape Shield Act, and stands for the principle that "[i]nquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense." *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999).

[30] Rule 412 provides in pertinent part:

(a) The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

(1) evidence offered to prove that a victim or witness engaged in other sexual behavior.

\*\*\*

(b) Exceptions.

(1) Criminal Cases. The court may admit the following evidence in a criminal case:

(A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of . . . injury, or other physical evidence;

\*\*\*

(C) evidence whose exclusion would violate the defendant's constitutional rights.

Evid. R. 412. Evidence of prior false accusations of rape made by a complaining witness does not constitute prior sexual conduct for rape shield purposes as such evidence is more properly understood as verbal conduct. *Blair v. State,* 877 N.E.2d 1225, 1233 (Ind. Ct. App. 2007), *trans. denied.* Indiana common law thus permits evidence of a prior false accusation of sexual misconduct. *Id.* Evidence of prior false accusations may only be admitted if the complaining witness admits that she had made a prior accusation of sexual

misconduct or the accusation is demonstrably false. *Id*. at 1234. "'Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved.'" *Id*. (quoting *Fugett v. State*, 812 N.E.2d 846, 849 (Ind. Ct. App. 2004)).

[31] On appeal, Faridi argues the trial court abused its discretion when it did not allow him to (1) cross-examine Wiggins on her written statement memorializing her 2006 interview with H.S. regarding what he maintains was a prior false accusation by H.S., and (2) ask questions of H.S. and Wiggins regarding a possible alternate perpetrator. We address each in turn.

### a. Prior False Accusation Evidence

[32] Faridi argues that H.S.'s statement to Wiggins – that Faridi's "**friends**" who lived with them "would do things like hit the girls and touch her sister, [S.S]'s chest" – was a prior false allegation given that S.S. said in 2018 to Officer Daggy that **Rozz** never touched her. *Exhibit Vol*. at 22 (emphases added). We disagree that H.S.'s statement was a prior false accusation about which Faridi should have been able to question Wiggins as an exception to Rule 412. First, this was not a claim that H.S. had falsely accused Faridi or anyone else of touching her. Rather, it is an allegation that some other person, not Faridi, touched a different minor child, not H.S. Faridi concedes that this is not currently considered in existing case law and asks us to extend the exception. We decline to do so, as we agree with the trial court that this was "too remote" to fall within the intended exception to the Rape Shield Rule. Second, H.S. did not say to Wiggins that **Rozz** touched S.S.'s chest, which is what S.S. denied.

Third, as noted by the trial court, H.S.'s statement was not necessarily false because the fact that S.S. denied that Rozz touched her does not conclusively mean that it did not happen.

[33]     Even assuming that, as Faridi claims, it was a prior false allegation and an exception to Rule 412 or, alternatively, was not covered by Rule 412 at all, we find that any error was harmless because it did not affect Faridi's substantial rights. In viewing the effect of an evidentiary ruling on a defendant's substantial rights, this Court looks to the probable impact on the fact finder. *See Johnson v. State*, 6 N.E.3d 491, 499 (Ind. Ct. App. 2014) (citing *Turner v. State*, 953 N.E.2d 1039, 1058-59 (Ind. 2011)).

[34]     Here, the reason that Faridi sought to cross-examine Wiggins about H.S.'s statement was to impeach H.S.'s credibility, and we find that even if Faridi had been allowed to do so, the probable impact of the evidence would likely have been minimal in light of her trial testimony. H.S. described what Faridi did to her and forced her to do to him. She was consistent and clear and affirmed multiple times that it was Faridi and only him who molested her. H.S. explained that she told her school counselor because Mother did not believe her, and she disclosed sexual abuse to Konanz. After the State charged Faridi, he left the country. At the time of trial, which was over a decade later, H.S. was engaged with a one-month-old child, she did not know where Mother was living and had no communication with her, nor had she seen Faridi since she was eight years old. Under these facts, a jury reasonably could have inferred that there was little incentive for H.S. to disrupt her life and come to trial and

lie about Faridi molesting her.  The error, if any, in the trial court's decision to not allow Faridi to question Wiggins regarding an alleged prior false accusation was harmless.

### b. Possible Other Perpetrator

We next turn to Faridi's claim that the trial court abused its discretion when it did not allow him to question H.S. and Wiggins regarding a possible other perpetrator.  Evidence of another source of the injury is permitted if the jury is presented with "partial corroboration" evidence of the victim's physical or psychological condition "to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator."  *Redding v. State*, 844 N.E.2d 1067, 1071 (Ind. Ct. App. 2006) (citation omitted).  If such evidence is admitted, it may be impeached through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition that the State placed at issue.  *Id*.  This exception is "narrow" and does not allow "the defendant to posit hypothetical perpetrators."  *Id*.  Our courts have also held that, when the victim is resolute that the defendant is the person who molested him or her, it was not an abuse of discretion to exclude evidence of a possible other perpetrator.  *See Turner v. State*, 720 N.E.2d 440, 446 (Ind. Ct. App. 1999) ("exception allowing evidence that another might have committed the molestations is inapplicable because there is no evidence that K. was confusing her perpetrator, inasmuch as she consistently accused Turner of molesting her and identified him in court as the perpetrator"); *Kielblock v. State*,

627 N.E.2d 816, 820 (Ind. Ct. App. 1994) (no abuse of discretion to exclude evidence of possible other perpetrator where there was no evidence that victim was confusing her perpetrator, she was specific about acts committed, and any probative value of the offered evidence was outweighed by prejudicial effect), *trans. denied*.

[36] Here, we agree with the trial court that there was no objective medical evidence of an injury; the only evidence of injury was H.S. testifying that Faridi had penetrated her anus to some degree and her subjective complaints of pain to Dr. Valentijn. Accordingly, we find that the partial corroboration doctrine is inapplicable and did not provide Faridi an avenue to present evidence that Said may have been the perpetrator. *See Oatts v. State*, 899 N.E.2d 714, 723 n.13 (Ind. Ct. App. 2009) ("Here, . . . there is no evidence other than [the victim]'s testimony that sexual contact occurred. Thus, this is not a situation that involves partial corroboration.") Furthermore, H.S., an adult witness, was firm, consistent, and resolute that Faridi molested her. She affirmed that she was not at all confused that it might have been Rozz or Said who perpetrated the acts that she described in her direct testimony. Under these circumstances, the trial court did not abuse its discretion when it did not permit Faridi to question H.S. or Wiggins to show that someone else, not Faridi, had committed the charged acts.

## II. Sentencing

[37] Faridi contends that his sentence is inappropriate and asks us to reduce it.[2] We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The

---

[2] We note that although Faridi frames his issue as whether the sentence is inappropriate, he discusses various aggravators and mitigators. *See e.g. Appellant's Brief* at 19 (acknowledging that there is "no denying" that his position of trust is an aggravator, but urging that it be balanced against mitigators, such as his lack of criminal history). It appears that he is arguing that the trial court erred by improperly identifying or weighing aggravators and mitigators, although he never asserts that the trial court abused its discretion in sentencing him. Our Supreme Court has made clear that inappropriate sentence and abuse of discretion claims are to be raised and analyzed separately. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007); *see also Foutch v. State*, 53 N.E.3d 577, 580 n.1 (Ind. Ct. App. 2016) (where defendant failed to present a separate, cogent argument with regard to abuse of discretion in sentencing and waived the issue for appellate review).

burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[38] When determining whether a sentence is inappropriate as to the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Id.* at 1081. For his Class A felony conviction, Faridi faced a sentencing range from twenty to fifty years with the advisory being thirty years. Ind. Code § 35-50-2-4. For each of the two Class C felony convictions, Faridi faced a sentencing range from two to eight years, with the advisory being four. I.C. § 35-50-2-6. Here, the trial court sentenced Faridi to forty-four years on the Class A felony child molesting conviction, and to four years on each of the two Class C felony child molesting convictions, all to run consecutive to each other, for a total of fifty-two years. Faridi's request is that we reduce the sentence on the Class A felony to the advisory of thirty years.

[39] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Here, Faridi repeatedly molested his eight-year-old stepdaughter while Mother was at work. H.S.'s testimony reflects his abuse was ongoing, not just three incidents, and his acts were predatory. He initially abused her under the auspices of discipline after claiming to find pornography in her backpack and threatening to tell Mother unless H.S. complied with his demands. Another time he spanked her and then penetrated her anally. H.S. clenched in an effort to prevent the

act, so Faridi instead forced her to perform oral sex on him. Faridi acknowledges that "[t]here is no denying that the offense is horrific" but urges "that this is [] true for any Class A Felony." *Appellant's Brief* at 18. Faridi has not persuaded us that the nature of the Class A felony offense warrants revision of his sentence

[40] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Although Faridi did not have any prior criminal history, he was only in the United States a few years during which time he molested his stepdaughter H.S. When H.S. attempted to tell Mother what was happening, Faridi yelled at her to "prove it." *Transcript Vol. III* at 247. He persuaded Mother that H.S. was lying. Feeling trapped and wishing for the abuse to stop, H.S. made the report to Wiggins, after which Faridi fled to Morocco and, later, Canada. We agree with the State that "[d]odging justice for over a decade shows a disrespect for authority and his victims" and "allow[ed] him to claim a law-abiding life until his extradition." *Appellee's Brief* at 28 (citing *Bennett v. State*, 883 N.E.2d 888, 894 (Ind. Ct. App. 2008) (noting that fleeing the jurisdiction reduces the weight of a lack of prior criminal history), *trans. denied*). We do not find anything about Faridi's character that makes his sentence inappropriate.

[41] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App.

2013), *trans. denied*.  Faridi has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[42]    Judgment affirmed.

Bailey, J. and Crone, J., concur.